UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER MENDOZA,<br>　　　　Plaintiff,<br>　v.<br>NATIONAL VISION, INC.,<br>　　　　Defendant. | Case No. 19-cv-01485-SVK<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br>Re: Dkt. Nos. 16, 17, 18 |

## I.　INTRODUCTION

Plaintiff Javier Mendoza ("Plaintiff") brings a putative class action alleging that Defendant National Vision, Inc. ("Defendant") committed various wage and hour violations, including failing to provide meal and rest periods, failing to pay overtime wages and providing inaccurate wage statements. *See* First Amended Complaint, ECF 1 ("FAC"). Plaintiff originally filed this action in Monterey County Superior Court, but on March 21, 2019, Defendant removed the case to this Court. ECF 1. Defendant bases its removal on the Class Action Fairness Act of 2005 ("CAFA") and diversity jurisdiction under 28 U.S.C. § 1332. *Id.*

On May 9, 2019, Plaintiff filed a motion to remand the case to Monterey County Superior Court, arguing that Defendant failed to establish that this case meets the amount in controversy requirements under CAFA or 28 U.S.C. § 1332. ECF 16. Plaintiff does not dispute that the case meets CAFA's minimal diversity and minimal class size requirements. Defendant opposes Plaintiff's motion and submits additional arguments and evidence to support removal in its opposition. ECF 17. Based on Defendant's additional evidence and arguments, Defendant estimates that the amount in controversy is $12,857,093.75. *Id.* at 13. The Court held a hearing on June 4, 2019. As set forth below, the Court **DENIES** Plaintiff's motion to remand.

## II. PROCEDURAL BACKGROUND

Plaintiff's first amended complaint ("Amended Complaint") alleges that Defendant's actions and policies violated several provisions of the California Labor Code. *See* FAC. In particular, Plaintiff brings eight claims on behalf of himself and a putative class of Defendant's current and former non-exempt hourly employees: (1) failure to provide meal periods; (2) failure to provide rest breaks; (3) failure to pay hourly and overtime wages; (4) failure to comply with itemized employee wage statement requirements; (5) failure to pay agreed wages; (6) failure to pay all wages upon termination; (7) civil penalties under the Private Attorneys General Act (Labor Code § 2698); and (8) unfair business practices in violation of California Business & Professions Code §17200. *Id.* at ¶¶ 35–109.

Defendant's opposition to Plaintiff's motion to remand sets forth the following amount in controversy estimates:

- Plaintiff's first claim: $1,335,950.00. *Id.* at 10.
- Plaintiff's second claim: $1,335,950.00. *Id.*
- Plaintiff's third claim: $2,003,925.00. *Id.* at 10–11.
- Plaintiff's fourth claim: $3,118,650.00. *Id.* at 8.
- Plaintiff's sixth claim: $2,491,200.00. *Id.* at 7.

Based on these claims, Defendant estimates that Plaintiff's potential attorneys' fees equal approximately $2,571,418.75. *Id.* at 11–12. This brings Defendant's total estimated amount in controversy to $12,857,093.75. *Id.* at 13.

## III. LEGAL BACKGROUND

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to federal court. 28 U.S.C. § 1441(a). The two most common forms of federal subject matter jurisdiction are federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. Federal question jurisdiction exists over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction requires that all plaintiffs be of diverse citizenship from all defendants, and that the amount in controversy exceeds $75,000. 28 U.S.C.

§ 1332(a); *Exxon Mobil Corp. v. Allapattah Svcs., Inc.*, 545 U.S. 546, 553–54 (2005). A defendant may also rely on CAFA to establish federal subject matter jurisdiction. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007). CAFA vests federal courts with "original jurisdiction" over class actions where (1) diversity of citizenship exists between at least one class member and at least one defendant; (2) the amount "in controversy exceeds the sum or value of $5,000,000;" (3) "the primary defendants are not States, State officials or other government entities against whom the district court may be foreclosed from ordering relief;" and (4) the class has at least 100 members. 28 U.S.C. §§ 1332(d)(2), (d)(5). Here, the Parties only dispute whether Plaintiff's case meets the amount in controversy requirement under either CAFA or individual diversity jurisdiction.

A defendant claiming federal jurisdiction under CAFA bears the burden of establishing that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation omitted). Although "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," a defendant must present "[e]vidence establishing the amount . . . when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S. Ct. 547, 554 (2014). The defendant can support its amount in controversy calculation in two ways. First, the defendant may demonstrate that "it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer*, 116 F.3d at 377. And for the purposes of such an analysis, the Court assumes the truth of the allegations in the plaintiff's complaint. *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939-EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013). Second, the defendant "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer*, 116 F.3d at 377). "A court may properly consider evidence the removing party submits in its opposition to remand, even if this evidence was not submitted with the original removal petition." *Altamirano*, 2013 WL 2950600, at *3 (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir.2002)).

3

## IV. ANALYSIS

Although Defendant's notice of removal only cites (1) Plaintiff's fourth claim under Labor Code § 226, (2) Plaintiff's sixth claim under Labor Code § 203 and (3) Plaintiff's attorneys' fees to satisfy the amount in controversy (ECF 1 at ¶¶ 25–42), Defendant's opposition to Plaintiff's motion to remand sets forth additional evidence and includes Plaintiff's first, second and third claims in its calculations as well. Plaintiff offers two overarching arguments against Defendant's revised calculations—the first challenges the evidence Defendant uses to support its calculation and the second challenges the violation rates assumed in Defendant's calculations. ECF 18 at 3–6.

First, in support of its opposition, Defendant submitted the declaration of its Payroll Director in Human Resources, Rey Aguilar. Aguilar Decl. ¶ 1–2, ECF 17-1. Aguilar's declaration provides estimates for the number of nonexempt employees in California for certain time periods to enable Defendant to estimate the number of its current and former nonexempt employees who potentially fall under Plaintiff's claims. *Id.* at ¶¶ 3–6. Plaintiff, relying on *Garcia v. Wal-Mart Stores, Inc.*, argues that Aguilar's estimates lack the requisite detail and foundation. ECF 18 at 4 (citing *Garcia v. Wal-Mart Stores, Inc.*, 207 F. Supp. 3d 1114, 1121 (C.D. Cal. 2016)). The Court in *Garcia* rejected a declaration offered to support the defendant's amount in controversy calculations because the declarant did not describe "which records he reviewed to arrive at the figures he provides; whether he reviewed the personnel data himself or used summaries prepared by other employees; or when he reviewed the records and completed his investigation." 207 F. Supp. 3d at 1121. In contrast, Aguilar provides sufficient detail regarding his personal knowledge, stating that the "various search and filter functions" on Defendant's "electronic payroll system and electronic databases" enabled him "to determine the number of employees holding nonexempt positions for a specific time period, the number of terminations during a specific time period, and the hourly rate of pay for employees for a specific time period." Aguilar Decl. ¶ 3. Aguilar then had searches performed for the various time periods at issue in Plaintiff's claims and personally reviewed the results. *Id.* at ¶¶ 3–6. These details provide sufficient foundation for the employee estimates in Defendant's amount in controversy

calculations.[1] *See Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (crediting evidence from a defendant's "human resources department, as well as [the defendant's] relevant time and payroll records" based on a finding that "[t]hese sources are sufficiently credible") (citations omitted).

Second, Plaintiff challenges Defendant's assumptions regarding the rates at which putative class members experienced the Labor Code violations identified in Plaintiff's claims. ECF 16 at 9–10; ECF 18 at 4–6. In particular, Plaintiff disavows an assumption of a 100% violation rate for Plaintiff's fourth and sixth claims. ECF 16 at 9–10. The cases cited by Plaintiff do express skepticism regarding such an assumption. *See Townsend v. Brinderson Corp.*, No. CV 14-5320-FMO (RZx), 2015 WL 3970172, at *5–6 (C.D. Cal. June 30, 2015) (rejecting a 100% violation rate where the defendant "failed to provide admissible, summary-judgement-type evidence to support its assumption" and the plaintiff alleged a "policy or practice" of not providing meal or rest breaks) (internal quotation marks omitted); *Amirian v. Umpqua Bank*, No. 17-cv-7574-FMO (FFMx), 2018 WL 3655666, at *5 (C.D. Cal. July 31, 2018) (finding that "allegations of a 'uniform policy' of wage abuse" did not support a 100% violation rate); *Moreno v. Ignite Rest. Grp.*, No. 13-cv-05091-SI, 2014 WL 1154063, at *5 (N.D. Cal. Mar. 20, 2014) ("In the Northern District, courts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support.").

Defendant responds with its own list of cases to support its violation rate assumptions. ECF 17 at 6–7, 9. For example, the Court in *Byrd v. Masonite Corp* found that allegations that wage statement violations occurred "[a]t all material times" because of "a uniform policy/practice of wage abuse" supported a 100% violation rate. No. EDCV 16-35 JGB (KKx), 2016 WL 2593912, at *6–7 (C.D. Cal. May 5, 2016) (internal quotation marks and emphasis omitted); *see also Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (approving a 100% violation rate for waiting time penalty calculations); *Altamirano*, 2013 WL

---

[1] Aguilar also states that a review of Plaintiff's pay statements shows that Plaintiff's lowest rate of pay during his employment was $10.00 per an hour. Aguilar Decl. ¶ 7. Defendant uses this as its wage estimate for its calculations, and Plaintiff does not challenge this assumption.

5

2950600, at *5 (observing that some "courts have additionally expressed concern that imposing overly stringent requirements on defendants to proving the amount in controversy would run the risk of essentially asking defendants to prove the plaintiffs' case").

After a detailed review of the cases analyzing amount in controversy calculations under CAFA, the Court in *Altamirano* concluded that "most of the cases conducting this analysis appear to allow the defendant to assume a 100% violation rate only where such an assumption is supported directly by, or reasonably inferred from, the allegations in the complaint." 2013 WL 2950600, at *7 (collecting cases). Indeed, other courts have recognized the situation-specific nature of this analysis. *Amirian*, 2018 WL 3655666, at *5 ("The allegations and supporting evidence in each case are unique and just as some courts have found it reasonable to assume a 100% violation rate based on allegations similar to those in this case, other courts have found those allegations insufficient to support a 100% violation rate.") (citation omitted). Accordingly, the Court must "evaluate the reasonableness of any assumed violation rate based on the evidence submitted and the allegations contained in the complaint." *Altamirano*, 2013 WL 2950600, at *7.

With these evidentiary findings and legal principles in mind, the Court addresses the Parties' calculations on a claim by claim basis.

### A. Plaintiff's First and Second Claims

Plaintiff's first and second claims share a similar legal basis and amount in controversy calculation. Plaintiff's first claim alleges that Defendant "regularly" and "repeatedly" failed to provide meal periods to Plaintiff and the putative class members. FAC ¶¶ 38–39. Similarly, Plaintiff's second claim alleges that Defendant "regularly and repeatedly" failed to provide rest periods to Plaintiff and the putative class members. *Id.* at ¶ 45. Labor Code § 226.7 provides that an employer must pay employees one hour of wages at the employee's normal rate for each workday that an employer fails to provide a meal or rest period. Cal. Lab. Code § 226.7(c).

Defendant's amount in controversy calculation for both Plaintiff's first and second claims estimates that class members worked 133,595 workweeks from November 13, 2014, through March 21, 2019. ECF 17 at 10, n. 7, 8 (citing Aguilar Decl. ¶ 4). Defendant assumes one violation per a class member per a week at a pay rate of $10.00 per an hour. *Id.* (citing Aguilar

6

Decl. ¶ 7). This yields an amount in controversy of $1,335,950.00 for both Plaintiff's first and second claims. *Id.* at 10.

Plaintiff's challenge to Defendant's calculations focuses on the admissibility of the Aguilar declaration. ECF 18 at 6. As noted above (section IV, *supra*), the Court finds that the Aguilar declaration provides sufficient foundation for its estimates regarding the number of putative class members and workweeks at issue. Further, the Court finds that the allegations in Plaintiff's Amended Complaint support Defendant's assumption of a weekly violation rate. For both claims, Plaintiff alleges that Defendant "regularly" and "repeatedly" failed to provide class members with meal and rest breaks. FAC ¶¶ 38–39, 45. Plaintiff also alleges that Defendant "maintained and enforced a uniform policy" of failing to pay class members for these missed meal and rest periods. FAC ¶ 24. Other courts have authorized defendants to assume weekly violations based on similar allegations of regular or consistent meal and rest break violations. *See Garza*, 178 F. Supp. 3d at 911 (holding that allegations of "regularly" missed meal breaks and a "policy or practice" of both meal and rest break violations supported a weekly violation rate for both meal and rest breaks); *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500-YGR, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) ("Given the allegations of a 'uniform policy and scheme' and that the violations took place 'at all material times,'" the defendant's assumption of one meal and one rest break "violation per week on each claimed basis is a sensible reading of the alleged amount in controversy"). Accordingly, Plaintiff's allegations indicate that Defendant reasonably estimates a weekly violation rate for Plaintiff's first and second claims. The Court likewise finds that Defendant's estimate of $1,335,950.00 for the amount in controversy for each claim is also reasonable.

### B. Plaintiff's Third Claim

Plaintiff's third claim alleges that Defendant "required Plaintiff and the Class Members on a regular and repeated basis to work shifts exceeding eight (8) hours in a workday, and to work more than forty (40) hours in a workweek," without recording their hours and "without paying overtime premium wages." FAC ¶ 57. Plaintiff further alleges that Defendant "regularly and consistently" failed to pay overtime wages as part of its "uniform policies and practices." *Id.* at ¶¶ 24, 58–59. One such policy or practice includes allegedly requiring employees to clock out on

7

one software system then proceed to a second system to "approve the hours worked for each particular day." *Id.* at ¶ 19. Plaintiff alleges that "[t]his would take up to five minutes each and every day" and that "[t]his uniform policy and practice-regularly and consistently resulted in Plaintiff and the Class Members working more than eight hours in a single workday and more than forty (40) hours in a single workweek." *Id.*

Defendant's amount in controversy calculation for Plaintiff's third claim estimates that class members worked 133,595 workweeks from November 13, 2014, through March 21, 2019. ECF 17 at 11, n. 9 (citing Aguilar Decl. ¶ 4). California law provides that an employer must pay an employee who works more than eight hours in a day or 40 hours in a week, at least one- and one-half times his or her base rate of pay. Cal. Labor Code § 510(a). Defendant's amount in controversy calculation thus assumes an overtime pay rate of $15.00 per an hour. Finally, Defendant assumes one hour of unpaid overtime per a week per a class member, which yields an amount in controversy for of $2,003,925.00 for Plaintiff's third claim. *Id.* at 11.

Again, Plaintiff's challenge to Defendant's calculations focuses on the admissibility of the Aguilar declaration. ECF 18 at 6. The Court rejects this argument above (section IV, *supra*) because the Aguilar declaration provides sufficient foundation for its estimates regarding the number of putative class members and workweeks at issue. The Court further finds that the allegations in Plaintiff's Amended Complaint support Defendant's assumption of a one hour of unpaid overtime per a week violation rate. Plaintiff alleges that Defendant "regularly and consistently" failed to pay overtime wages as part of its "uniform policies and practices." FAC at ¶¶ 24, 58–59. Plaintiff also alleges that overtime violations took place "each and every day" when Defendant required employees to clock out prior to approving their hours on a separate system. *Id.* at ¶ 19. Other courts have authorized defendants to assume a one hour per a week violation rate based on similar allegations of regular or consistent overtime violations. *See Jasso*, 2012 WL 699465, at *5 (holding that "allegations of a 'uniform policy and scheme' and that the violations took place 'at all material times'" supported an assumption of one hour of unpaid overtime per a week); *see also Arreola*, 2014 WL 6982571, at *4 (approving a one hour per a week violation rate and noting that "[w]here, as here, a proposed class includes all employees during the class period,

8

and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week"). Accordingly, Plaintiff's allegations indicate that Defendant's estimate of one hour of unpaid overtime per a week is reasonable. The Court thus finds that Defendant's $2,003,925.00 amount in controversy estimate for Plaintiff's third claim is also reasonable.

### C. Plaintiff's Fourth Claim under Labor Code § 226

Plaintiff's fourth claim alleges that Defendant "maintained and enforced a uniform policy" of "regularly and consistently violat[ing] Labor Code § 226 by" failing to provide Plaintiff and the putative class members with itemized wage statements. FAC ¶¶ 21, 68–77. Plaintiff specifically alleges that the wage statements failed to accurately state: (1) "the total hours worked;" (2) "overtime hours worked;" (3) "gross wages earned;" (4) "net wages earned;" (5) "the correct regular rate of pay, overtime and vacation rates of pay and the corresponding number of hours worked under each rate;" (6) "all deductions;" (7) "premium wages owed for missed rest and meal periods;" and (8) "the correct name and address of the employer." *Id.* at ¶¶ 21, 71. As a result of these violations, Plaintiff seeks penalties and damages, including but not limited to those set forth in Labor Code § 226—a fifty-dollar ($50) penalty for the first § 226 violation and a one-hundred-dollar ($100) penalty for each violation in a subsequent pay period.[2] *Id.* at ¶ 77; Cal. Lab. Code § 226(e)(1).

Defendant's amount in controversy calculation asserts that 1,501 putative class members worked approximately 31,937 pay periods during the one-year statute of limitations period through the date of removal. ECF 17 at 8 (citing Aguilar Decl. ¶ 5). Defendant assumes a 100% violation rate, meaning that each pay statement for each class member contained a violation. *Id.* at 7–8. Based on § 226(e)(1)'s penalties, Defendant calculates the amount in controversy as $3,118,650.00. *Id.* at 8.

---

[2] The aggregate penalties per an employee are capped at $4,000. Cal. Lab. Code § 226(e)(1). Because Defendant paid its California nonexempt employees on a bi-weekly basis, no class member can reach the $4,000 cap during the statute of limitations period. ECF 17 at n.5.

9

Plaintiff focuses his challenge on Defendant's asserted 100% violation rate. ECF 16 at 8–10. In particular, Plaintiff argues that he limits his § 226 claim to wage statements that "fail[] to correctly calculate the correct regular rate of pay for a pay period when Plaintiff was paid multiple pay rates *and* a non-discretionary bonus/commission pay." *Id.* at 8 (emphasis in original). Plaintiff further contends that Defendant fails to "parse out" the wage statements that include multiple pay rates and non-discretionary bonuses/commission pay, and as a result Defendant fails to support its 100% violation rate. *Id.* at 9.

Despite Plaintiff's attempts in his motion to limit his claim to wage statements that include multiple pay rates and non-discretionary bonuses/commission pay, Plaintiff's Amended Complaint does not support this limitation. In addition to listing eight different types of § 226 violations, Plaintiff alleges particular examples of violations that are likely to appear on each wage statement. For instance, Plaintiff's allegations regarding a failure to provide meal and rest periods (FAC ¶¶ 38–39, 45–46), support the assumption that each class member missed one meal and rest period each week. As a result, each wage statement will not accurately state the total hours worked or the amount of premium wages owed for missed rest and meal periods. Furthermore, Plaintiff's third claim alleges a failure to pay overtime wages by requiring class members to clock out prior to approving their hours on a separate system "each and every day." *Id.* at ¶ 19. These allegations suggest that every wage statement will, at a minimum, not accurately state the total hours worked, overtime hours worked, gross wages earned or net wages earned.

Plaintiff argues that his letter to the Labor and Workforce Development Agency limits his § 226 claim to wage statements that include multiple pay rates and non-discretionary bonus/commission pay. ECF 18 at 5. But upon review, the letter does not limit Plaintiff's claim to that wage statement violation. It instead alleges that "throughout the relevant period," Defendant "issued "wage statements [that] inaccurately report the number of hours worked, the number of overtime hours worked, gross wages earned, net wages earned and deductions." ECF 18-1, Ex. A at 3. Accordingly, the Plaintiff's allegations indicate that Defendant's 100% violation rate is reasonable. *See Byrd*, 2016 WL 2593912, at *6–7 (finding a 100% violation reasonable where the plaintiff alleged that wage statement violations occurred "at all material

10

times" because of a "uniform policy/practice of wage abuse") (internal quotation marks and emphasis omitted). The Court thus finds that Defendant's $3,118,650.00 amount in controversy estimate for Plaintiff's fourth claim is reasonable.

### D. Plaintiff's Sixth Claim under Labor Code § 203

Plaintiff's sixth claim alleges that Defendant maintained a "uniform policy" of "regularly and consistently" failing to pay employees all owed and unpaid wages for work performed at the end of their employment in violation of Labor Code § 203. FAC at ¶ 23. Labor Code § 203 provides that when an employer willfully fails to pay any wages of an employee who is discharged or quits, the employee's wages continue to accrue as a penalty for thirty days. Cal. Lab. Code § 203.

Defendant's amount in controversy calculation estimates there were 1,038 terminated putative class members during the three-year statute of limitations period. ECF 17 at 7 (citing Aguilar Decl. ¶ 6). Defendant further assumes a 100% violation rate based on allegations in the Amended Complaint and a pay rate of $10 per an hour. *Id.* at 6–7 (citing Aguilar Decl. ¶ 7, Ex. A). This calculation results in an amount in controversy of $2,491,200.00. *Id.* at 7.

Plaintiff again asserts that Defendant fails to adequately support its assumption of a 100% violation rate and that the Aguilar declaration lacks foundation. ECF 16 at 9; ECF 18 at 3–4. As with Plaintiff's fourth claim, the allegations in Plaintiff's Amended Complaint support assuming a 100% violation rate. In particular, Plaintiff's third claim alleges that Defendant "regularly and consistently" failed to pay overtime wages as part of its "uniform policies and practices." FAC at ¶¶ 24, 58–59. Plaintiff further alleges that overtime violations occurred "each and every day" based on Defendant's policy of requiring employees to clock out prior to approving their hours. *Id.* at ¶ 19. These allegations support the assumption that every putative class member who quits or is discharged suffered a § 203 violation based on wages due from this uncompensated overtime.[3] Plaintiff's allegations therefore support assuming a 100% violation rate. *Byrd*, 2016

---

[3] The Court notes that courts disagree on whether meal and rest break violations qualify as "wages" for the purpose of supporting a § 203 violation. *See In re: Autozone, Inc.*, No. 3:10-md-02159-CRB, 2016 WL 4208200, at *6 (N.D. Cal. Aug. 10, 2016). However, the Court need not resolve this issue because Plaintiff's allegations regarding Defendant's overtime violations are

11

1 WL 2593912 at *3 (approving a 100% § 203 violation rate where the complaint alleged a uniform

2 policy and practice of failing to pay overtime as well as missed meal and rest breaks).

3 Accordingly, the Court's finds that Defendant's $2,491,200.00 estimate for the amount in

4 controversy for Plaintiff's sixth claim is reasonable.

### E. Attorneys' Fees

Defendant's amount in controversy calculation also includes attorneys' fees equal to 25% of the aggregate amount in controversy. ECF 17 at 11–12. Plaintiff does not dispute Defendant's 25% assumption for attorneys' fees and instead simply argues that "any reduction in estimated damages in light of a reduced violation rate, would also proportionately reduce any fee award to Plaintiff's counsel." ECF 18 at 6. The Court agrees that 25% of the aggregate amount in controversy provides a reasonable estimate of the potential attorneys' fees at issue. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.") (citation and internal quotation marks omitted). Accordingly, the Court finds that Defendant's $2,571,418.75 estimate for attorneys' fees is reasonable.

### F. Total Amount in Controversy

Based on the forgoing analysis, the Court finds the following amount in controversy totals reasonable:

////
////
////
////
////
////
////
////

---

sufficient to support a 100% violation rate.

| Claim | Amount in Controversy Estimate |
|---|---|
| First Claim: Meal Period Violations | $1,335,950.00 |
| Second Claim: Rest Period Violations | $1,335,950.00 |
| Third Claim: Overtime Violations | $2,003,925.00 |
| Fourth Claim: Wage Statement Violations | $3,118,650.00 |
| Sixth Claim: Waiting Time Penalties | $2,491,200.00 |
| **Sub-Total:** | **$10,285,675.00** |
| Attorneys' Fees (25%) | $2,571,418.75 |
| **Total:** | **$12,857,093.75** |

Because the Court finds that the class claims satisfy the amount in controversy requirement under CAFA, the Court does not reach whether Plaintiff's individual claims satisfy the amount in controversy requirements under 28 U.S.C. § 1332.

### V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand (ECF 16). The Court further **ORDERS** as follows:

- The Court **GRANTS** Defendant's request for judicial notice (ECF 17-2).
- The Court **GRANTS** Plaintiff's request for judicial notice (ECF 18-1).
- Pursuant to the Parties' stipulation (ECF 9), Defendant's response to Plaintiff's complaint is due **July 23, 2019**.
- The Court **CONTINUES** the Parties' initial case management conference to **Tuesday, August 6, 2019 at 9:30 a.m.** The Parties' joint case management statement is due **July 30, 2019.**

**SO ORDERED.**

Dated: July 8, 2019

SUSAN VAN KEULEN
United States Magistrate Judge

13