James Fitzpatrick, Esq. (SBN: 129056)
Charles Swanston, Esq. (SBN: 181882)
**FITZPATRICK & SWANSTON**
555 South Main Street
Salinas, CA 93901
Telephone: (831) 755-1311
Facsimile: (831) 755-1319

Larry W. Lee (SBN 228175)
Max W. Gavron (SBN 291697)
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa Street, Suite 1250
Los Angeles, California 90071
Telephone: (213) 488-6555
Facsimile: (213) 488-6554

Attorneys for Plaintiff
JAVIER MENDOZA on behalf of himself and all
other similarly situated employees

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER MENDOZA on behalf of himself and all other similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL VISION, INC.; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. 19-cv-01485-SVK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          May 19, 2020<br>Time:          10:00 A.M.<br>Courtroom:  6, 4th Floor<br>Judge:         Hon. Susan van Keulen |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 19, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Susan van Keulen, Plaintiff Javier Mendoza ("Plaintiff") will and hereby does move the Court for preliminary approval of the proposed class action and PAGA settlement.  Specifically, Plaintiff respectfully requests that the Court:  (1) grant preliminary approval for the proposed class action and PAGA settlement; (2) grant conditional certification of the proposed Settlement Class, including of all current and former employees who were employed by National Vision, Inc. within the State of California in a non-exempt, hourly position at any time from November 13, 2014 through the preliminary approval date or May 31, 2020, whichever is sooner; (3) authorize the mailing of the proposed notice to the class of the settlement; and (4) schedule a "fairness hearing," i.e., a hearing on the final approval of the class action and PAGA settlement.

Plaintiff makes this unopposed motion on the grounds that the proposed settlement is within the range of possible final approval, and notice should, therefore, be provided to the class. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement, the attached Memorandum of Points and Authorities in Support, the Declarations of Larry W. Lee, Max W. Gavron, B. James Fitzpatrick, and Javier Mendoza filed herewith, the Settlement Agreement and Release of Claims filed herewith, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated:  April 14, 2020                     DIVERSITY LAW GROUP, P.C.


By**:**   __/s/ Larry W. Lee_____ _____
                                                Larry W. Lee
                                                Max W. Gavron
                                                Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION AND SUMMARY OF AGREEMENT ................................................. 8

  A. Factual Allegations ................................................................................................ 8

  B. Procedural Background. ..................................................................................... 10

      *a.*   *Summary of the Litigation.* ...................................................................... 10

      *b.*   *Summary of Investigation and Discovery.* ............................................. 11

  C. Summary of the Current Settlement. ................................................................ 12

  D. The Settlement is Fair, Reasonable, and Adequate. ....................................... 14

II. LEGAL ANALYSIS ................................................................................................... 15

  A. Two-Step Approval Process. ............................................................................. 15

  B. The Standard for Preliminary Approval. ....................................................... 16

  C. The Court Should Certify the Settlement Class. ............................................ 18

      1.   Numerosity & Ascertainability ............................................................. 18

      2.   Typicality ................................................................................................ 19

      3.   Commonality ......................................................................................... 19

      4.   Adequacy ............................................................................................... 20

      5.   Common Questions of Law and Fact Predominate ............................. 21

      6.   Superiority of Class Action ................................................................... 21

  D. The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion.. 21

      1.   The Settlement May be Presumed Fair and Reasonable. ..................... 21

          a.   Experience of Class Counsel. ................................................... 23

          b.   Investigation and Discovery Prior to Settlement. .................... 23

      2.   The Settlement is Fair, Reasonable, and Adequate. ............................ 25

          a.   Risks of Proceeding with Trial and Any Appeals. ................... 25

          b.   The Settlement is Within the Range of Reasonableness. .......... 26

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

c.   The Complexity, Expense, and Likely Duration of Continued
Litigation Against the Settling Defendant Favors Approval. ................... 27

d.   Non-Admission of Liability by Defendant. ............................................ 27

E.  The Notice to be Given is the Best Practicable & Complies with the CAFA. ........... 28

F.  Attorney's Fees, Costs, and Class Representative Enhancement. ............................. 28

G.  Settlement Administrator ............................................................................................ 29

III. CONCLUSION .................................................................................................................. 30

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA SETTLEMENT**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

**Federal Cases**

*Alonzo v. Maximus, Inc*., 275 F.R.D. 513, 521 (C.D. Cal. 2011) ................................. 20

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ....................................... 18

*Boyd v. Bechtel Corp*., 485 F. Supp. 610, 616-17 (N.D. Cal. 1979)............................. 25

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) ............................. 19

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)............................................... 25, 27

*Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990)............................... 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ........................... 20, 21

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).................... 19

*Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF, 2020 WL 127489, at *6 (N.D. Cal. Jan. 10, 2020) ......................................................................................... 24

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ........................... 22

*In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980)........................... 22

*In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ........................................................................... 21

*In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995).................................... 25

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) .................... 22

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988)................................................................................. 19

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016)........................................ 18

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014)............................... 20

*Lao v. H&M Hennes & Mauritz, L.P.*, No. 5:16-CV-00333-EJD, 2018 WL 3753708, at *13 (N.D. Cal. Aug. 8, 2018)........................................................................... 27

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ............................ 20

*Magadia v. Wal-Mart*, 2018 WL 339139 (N.D. Cal. Jan. 9, 2018)............................... 20

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co*., 834 F.2d 677 (7th Cir. 1987) 22

5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ......22, 25, 27

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625
(9th Cir. 1982).................................................................................. 16, 17, 18, 27

*Parsons v. Ryan,* 754 F.3d at 685 (9th Cir. 2014) ......................................... 19

*Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*, 323 F. Supp. 364, 372
(E.D. Pa. 1970).......................................................................................... 17

*Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989).................................... 22

*Radcliffe v. Experian Info. Sols., Inc.,* 715 F.3d 1157, 1165 (9th Cir. 2013) .............. 20

*Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010) ................................ 19

*Slaven v. BP Am., Inc.,* 190 F.R.D. 649, 654 (C.D. Cal. 2000) ............................ 19

*Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364, at *11 (N.D. Cal.
Sept. 5, 2008) ......................................................................................... 21

*Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978) 22

*Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979).............................. 22

*Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).......... 16, 18

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ...................... 27

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011) ............................... 20

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997) ............... 18

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ............................. 21

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)........... 21

*Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971) ..................................... 27

**State Cases**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 517 (2018) ........................ 24, 25

**Statutes**

California Civil Code § 1542 ................................................................... 29

Labor Code § 203(a) ........................................................................... 23

Labor Code § 226(e) ........................................................................... 23

Labor Code § 2699(f)(2)........................................................................ 24

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA SETTLEMENT**

**Other Authorities**

4 *Newberg on Class Actions*, at § 11.26 (4th ed. 2010) .......................................................... 16, 18

4 *Newberg on Class Actions,* at § 11.41 ................................................................................. 27

4 *Newberg on Class Actions*, at §11.45 ................................................................................. 26

4 *Newberg on Class Actions* at §11.47 ................................................................................. 22

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010) ........................... 17

Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at 174

    (3d ed. 2005) ................................................................................................................ 21

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632 ................................ 16, 17, 25

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................ 16, 18

Fed. R. Civ. P. 23(a)(1) .......................................................................................................... 18

Fed. R. Civ. P. 23(a)(2) .......................................................................................................... 19

Fed. R. Civ. P. 23(a)(3) .......................................................................................................... 19

Fed. R. Civ. P. 23(b) .............................................................................................................. 16

Fed. R. Civ. P. 23(b)(1) .......................................................................................................... 18

Fed. R. Civ. P. 23(b)(2) .......................................................................................................... 18

Fed. R. Civ. P. 23(b)(3) ............................................................................................... 18, 21, 28

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 28

Fed. R. Civ. P. 23(e)(B) .......................................................................................................... 28

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 11

Fed. R. Civ. P. 23(a)(1)-(4) ..................................................................................................... 18

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION AND SUMMARY OF AGREEMENT

Plaintiff Javier Mendoza ("Plaintiff") respectfully requests that the Court grant preliminary approval of the Settlement Agreement and Release of Claims (hereinafter referred to as "Settlement Agreement") that he has reached in the above-captioned matter with Defendant National Vision, Inc. ("Defendant" or "NVI") (Plaintiff and Defendant collectively referred to as the "Parties").

#### A.     Factual Allegations.

NVI provides optical retail services to customers in various locations, such as a store located in a retail shopping center, and a shop-within-a shop such as a store within a Walmart. Plaintiff held different positions throughout his employment, including Store Manager, Assistant Store Manager, and Sales Associate.  He worked in a Vision Center inside of a Walmart in Salinas, California.  (Declaration of Javier Mendoza ("Mendoza Decl.") ¶ 2.)  Plaintiff was employed by Defendant from on or about September 3, 2014, through approximately September 13, 2018.  (*Id.*)

Plaintiff alleges, as with all other non-exempt, hourly store employees of Defendant in the State of California, that Defendant maintained a meal period policy that failed to provide a meal period to Plaintiff and Class members that provided for 30 consecutive duty-free minutes that began before more than five (5) hours were worked. Defendants failed to pay Plaintiff and Class Members one (1) hour of pay at Plaintiff's and Class Members' regular rate of compensation for each meal period that was not timely provided.

Additionally, Plaintiff further alleges that Defendant failed to authorize, permit and provide Plaintiff and the Class Members with paid duty-free rest and recovery periods of at least ten (10) consecutive uninterrupted minutes during which Plaintiff and the Class Members were relieved of all duties for every four (4) hours worked, or major fraction thereof, and which were counted as hours worked for which there would be no deduction from wages. Plaintiff alleges the policy maintained by Defendant required Plaintiff and the Class Members to abstain from taking more than one rest period on workdays lasting longer than six hours.  Defendant's written policy explicitly permitted

employees to leave the store for meal periods, but it is Plaintiff's position it was silent as to employees' ability to leave the store for their rest periods.   Pursuant to this policy, Defendant failed to compensate Plaintiff and the Class Members one (1) hour of wages at their regular rate of compensation for each duty-free rest period not provided.

Further, Plaintiff alleges Defendant required Plaintiff and Class Members to clock out, then after clocking out from work, approve the hours worked for each particular day.  This would take up to five minutes each and every day during which the employees' time was not being reported and such time was therefore unpaid.  Further, Plaintiff alleges and the Class Members were required to once again, after clocking out from work, approve their hours worked on a weekly basis.  This uniform policy and practice regularly and consistently resulted in Plaintiff and the Class Members working more than eight hours in a single workday and more than forty (40) hours in a single workweek.  Plaintiff alleges as a result of this policy, Defendant failed to pay Plaintiff and the Class Members overtime premium wages of one and one-half times the employee's regular rate of pay for all hours worked over eight (8) hours in a single workday and/or more than forty (40) hours in a single workweek.

Plaintiff alleges that Defendant also failed to properly compensate Plaintiff and Class Members for the use of their personal vehicles and cellular phones.  Employees were required to travel off-site to perform sales functions, and used their vehicles and cellular phones without proper reimbursement.

Further, Plaintiff alleges Defendant failed to correctly calculate the regular rate of pay during pay periods in which Plaintiff and the Class Members were paid multiple pay rates and received a non-discretionary bonus and/or commission pay.  Plaintiff alleges as a result, the correct regular rate of pay, the overtime rate of pay, as well as the gross and net wages earned as reflected on the Plaintiff's and the Class Members' itemized wage statements were all inaccurately identified.  Plaintiff alleges  Defendant similarly failed to correctly calculate the rate of pay when it paid Plaintiff and Class Members sick pay.  Instead of using the regular rate of pay, Defendant paid Plaintiff and Class Members sick pay at the base, hourly rate of pay.

Plaintiff also alleges that Defendant failed to provide Plaintiff and the Class Members with

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

complete and accurate itemized wage statements accurately stating the total hours worked; overtime hours worked; gross wages earned; net wages earned; the number of piece-rate units earned and any applicable piece rate; all rates of pay in effect during the pay period; regular, overtime and vacation rates of pay that accurately reflected the amount the employer was required under California law to pay; the corresponding number of hours worked under each rate; all deductions; premium wages owed for missed rest and meal periods; the correct name and address of the employer.

On the other hand, Defendant denies that it has engaged in any alleged unlawful conduct and maintains that it has complied with California law and properly paid its employees in all respects.  In this regard, Defendant alleges that it:  1) instructed employees to perform all work while on-the-clock, including approving their hours worked; 2) required employees to take duty-free meal and rest periods, and allowed them to leave the store as they saw fit during those periods; 3) properly reimbursed its employees for any job-related expenses; 4) provided accurate and complete wage statements; and 5) properly calculated the "regular rate of pay" for purposes of overtime and sick pay.  Defendant also denies that this case could properly be certified as a class action.

**B.     Procedural Background.**

*a.   Summary of the Litigation.*

On or about November 13, 2018, Plaintiff filed this action in the Monterey Superior Court, alleging the following causes of action:  (1) failure to provide meal periods or compensation in lieu thereof; (2) failure to provide rest periods or compensation in lieu thereof; (3) failure to pay hourly and overtime wages; (4) failure to comply with itemized employee wage statement requirements; (5) failure and refusal to pay agreed wages; (6) failure to pay all wages upon termination; and (7) unfair business practices.

On March 21, 2019, Defendant removed this action to the United States District Court for the Northern District of California.  Dkt. No. 1.  On April 12, 2019, Plaintiff moved to remand. Dkt. No. 16.  After briefing and oral argument, the Court denied Plaintiff's Motion for Remand on July 8, 2019.  Dkt. No. 25.

Thereafter, the Parties extensively met and conferred regarding Defendant's anticipated

motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. No. 26.
Plaintiff filed his Second Amended Complaint, on July 22, 2019, to address some of the
deficiencies alleged by Defendant during meet and confer efforts.  Dkt. No. 29.  Thereafter, the
Parties continued to meet and confer regarding Defendant's anticipated motions, and the
progress of the case generally.  Gavron Decl. ¶ 10.  The Parties agreed to participate in a
mediation with respected mediator Jeffrey Ross, and stipulated to stay formal discovery and
Defendant's deadline to respond to Plaintiff's Second Amended Complaint pending mediation
with Mr. Ross.  Dkt. No. 30.

As previously explained to the Court, Plaintiff will file a Third Amended Complaint on
May 8, 2020.  *See* Dkt. No. 46.  Provided that the Court preliminarily approves the Parties'
proposed settlement, Defendant will be relieved of the obligation to respond to Plaintiff's Third
Amended Complaint.  *Id.*  The Third Amended Complaint includes a claim and sub-class for
employees who earned sick pay during the applicable class period.  (Lee Decl. ¶ 4; Ex. A.)

Through counsel's investigation in advance of mediation, counsel determined and alleged
that Defendant was not properly calculating the sick pay it paid its employees.  Thus, the Parties
mediated and were able to resolve that additional claim, which necessitated the filing of
Plaintiff's Third Amended Complaint.[1]  (Lee Decl. ¶¶ 3–4.)

         *b.*  *Summary of Investigation and Discovery.*

With respect to investigation and discovery, Plaintiff conducted extensive investigation
of the facts surrounding the claims in this action before filing suit, as well as conducted extensive
investigation in advance of mediation.  (Lee Decl. ¶¶ 3, 7; Gavron Decl. ¶ 11; Fitzpatrick Decl.
¶¶ 3–6.)

Plaintiff obtained and reviewed documents produced by Defendant in advance of
mediation, as detailed in the Parties' Joint Status Report, filed November 15, 2019.  Dkt. No. 38.
Specifically, Defendant produced, and Plaintiff analyzed:

- NVI's policies and procedures regarding meal and rest breaks;

---

[1] Pursuant to the Parties' Stipulation, *see* Dkt. No. 46, Plaintiff will file his Third Amended
Complaint after the expiration of the administrative exhaustion period, under the PAGA.

- Vision Center Incentive Plans for Associates (2014-2019), Store Managers (2015-2019), Optometric Technicians (2015-2019), and Lab Technicians (2018-2019);
- Ceridian Dayforce User Manuals and Updates;
- NVI's policies and procedures regarding reimbursement for travel and business expenses;
- The total number of non-exempt NVI employees who have worked in California at any time between November 13, 2014 - February 5, 2020 ("Employees");
- The total number of workweeks worked by Employees;
- The total number of Employees whose employment ended at any time between November 13, 2015 - February 5, 2020, whether voluntarily or involuntarily;
- The total number of Employees who worked overtime and earned incentive pay during the same pay period;
- The total number of Employees who received "Retroactive Pay," "EG/Assoc PIP," and/or "Regular Rate OT" pay;
- The total number of pay periods each of the Employees received "Retroactive Pay," "EG/Assoc PIP," and/or "Regular Rate OT" pay;
- The average hourly rate of Employees.

*See* Dkt. No. 38.

In sum, Plaintiff has vigorously prosecuted this action, and the Parties now seek to resolve disputed claims. (Lee Decl. ¶¶ 3, 7; Gavron Decl.¶ 11; Fitzpatrick Decl. ¶¶ 3–6.)

**C.    Summary of the Current Settlement.**

On February 19, 2019, the Parties attended an all-day mediation with Jeffrey A. Ross, Esq. After a full day of negotiations, the Parties were not able to reach a settlement. (Lee Decl. ¶ 4.) Mr. Ross issued a mediator's proposal for the Parties' consideration at the conclusion of the mediation. (Lee Decl. ¶ 4.) The Parties ultimately accepted Mr. Ross's proposal and began drafting the Settlement Agreement. (*Id.*, Ex. A) The Settlement Agreement provides for a total settlement sum of $3,500,000.00, inclusive of payments to Settlement Class Members, the class representative enhancement, payment to the Labor & Workforce Development Agency ("LWDA") and Aggrieved Employees pursuant to the PAGA, attorneys' fees and costs, and

settlement administration costs.  (Settlement Agreement at § 6).

The Net Settlement Proceeds ("NSP") (after deduction of attorneys' fees in the amount of up to $1,166,666.67, costs up to $35,000.00, the class representative enhancement fee in the amount of up to $10,000.00, PAGA payment in the amount of $450,000.00 ($337,500.00 (75%) which will be paid to the LWDA, and $112,500 (25%) to the aggrieved employees), and costs of settlement administration not to exceed $25,000.00) is approximately $1,813,333.33  (Settlement Agreement at §§ 5-10; Lee Decl. at ¶ 5.).

As provided in the Settlement Agreement, two-thirds of the NSP will be allocated as statutory penalties and will not be subject to withholdings, and one-third of the NSP will be considered wages and will be subject to all applicable withholdings.  (Settlement Agreement § 11.)  All the PAGA payment that is distributed to the aggrieved employees is classified as other income.  (Settlement Agreement § 7.)  Defendant has also agreed to be separately responsible for its employer-side share of payroll taxes.  (Settlement Agreement § 11.)

**Significantly, this settlement is non-reversionary and claim forms are <u>not</u> required**. (Settlement Agreement § 6 ("The Gross Settlement Fund will be fully-distributed without reversion to the benefit of Defendant.").)  In other words, none of the unclaimed settlement funds will revert back to Defendant and a Settlement Class Member need not do anything to receive their share.  Instead, the Class Member will automatically receive their share of the settlement funds so long as they do not opt-out from the settlement.  Moreover, the NSP available to Class Members will proportionately increase as the result of any opt-outs.  Thus, each Class Member's settlement amount could be further increased depending on the number of exclusions submitted.

Even if a putative class member chooses to opt out of the class settlement, they will still receive their portion of the settlement allocated to Plaintiff's PAGA claims if they are a member of the PAGA group.  (Settlement Agreement § 7.)  Each member of the PAGA group will receive a proportionate share of the portion of the settlement allocated to the aggrieved employees.  (Settlement Agreement § 7.)

Any remaining monies from uncashed checks will be distributed to National Vision Crisis Relief Fund.  (Settlement Agreement § 12.)  The National Vision Crisis Relief Fund helps

NVI employees and affiliated optometrists who are facing financial hardship as a result of a natural disaster, family emergency or other unexpected events. E4E Relief, a wholly-owned subsidiary of Foundation For The Carolinas, a 501(c)(3) public charity, independently administers the National Vision Crisis Relief Fund ensuring funds go directly toward helping NVI employees and affiliated optometrists, for example, to repair or rebuild homes, replace belongings and cover the cost of food, clothing and basic living expenses.  Defendant does not receive grants or any monies from the National Vision Crisis Relief Fund.  Due to the fund's independence, the unpaid funds will not revert to Defendant but will directly support projects that will benefit the Class.  (Declaration of Renee Newman ¶¶ 2–7.)  Plaintiff's counsel do not have any relationship with National Vision Crisis Relief Fund.  (Lee Decl. ¶ 16; Gavron Decl. ¶ 14; Fitzpatrick Decl. ¶ 8.)

   The Settlement Class Members include all current and former employees who were employed by National Vision, Inc. within the State of California in a non-exempt, hourly position at any time from November 13, 2014 through the preliminary approval date or May 31, 2020 (referred to herein as the "Settlement Class").  (Settlement Agreement § 3.)  The identities of Class Members can be ascertained from Defendant's payroll records.  Based upon Defendant's records, the estimated number of unique Settlement Class Members was approximately 2,663 at the time of settlement.  (Lee Decl. ¶ 7; Settlement Agreement § 3.)  As discussed above, Class Members have the right to opt-out and exclude themselves from the class action settlement.

   **D.    The Settlement is Fair, Reasonable, and Adequate.**

   Based on their own respective independent investigations and evaluations, the Parties and their respective counsel are of the opinion that settlement for the consideration and on the terms set forth in their Settlement Agreement is fair, reasonable, and adequate and is in the best interests of the class and the Defendant in light of all known facts and circumstances and the expenses and risks inherent in litigation.  (Lee Decl. at ¶¶ 8; Gavron Decl. at ¶ 9; Fitzpatrick Decl. ¶ 3.)

   Defendant denies any liability or wrongdoing of any kind associated with the claims

14

alleged by Plaintiff.  Defendant denies that certification of the Settlement Class is appropriate for any purpose other than that of settling this lawsuit.  If this case continued and proceeded to trial, Defendant also would assert that Plaintiff would not be able to prevail on his claims, as already discussed between the Parties in meet and confer discussions regarding Defendant's anticipated dispositive motions, and at mediation.

Based on the approximately 2,663 Class Members, each Class Member will receive a raw average of approximately $680.94, after deduction for attorneys' fees, class representative enhancement payment, payment to the LWDA, settlement administration costs, and litigation costs.  (Lee Decl. at ¶ 7.)  Each individual Class Member's settlement amount may be more or less than this raw average, depending on each respective Class Member's length of employment with Defendant and the number of opt-outs received.  (*Id.*)

In order to calculate each Class Member's pro-rata share, the Claims Administrator will use the dates of employment provided by Defendant. The Net Settlement Fund shall be distributed to each Settlement Class Member by multiplying the Net Settlement Fund by a fraction, the numerator of which is the total of a Settlement Class Member's number of workweeks the Settlement Class Member was employed by NVI as a non-exempt, hourly employee during the Class Period and the denominator of which is the total of all Settlement Class Members' Workweeks. Workweeks shall be calculated based on Defendant's records. (Settlement Agreement § 11)

The portion of the PAGA payment allocated to the Aggrieved Employees will be distributed evenly to the Aggrieved Employees, which will result in an approximate payment of $53.09 per Aggrieved Employee, in addition to any amount they might receive if they choose to remain part of the class.  (Lee Decl., ¶ 7; Settlement Agreement § 7.)

## II.    LEGAL ANALYSIS

### A.    Two-Step Approval Process.

Any settlement of class litigation must be reviewed and approved by the Court.  This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review and approval by the court after notice has been distributed to the class members for their comment or

objections.  The Manual for Complex Litigation, Fourth states:

> Review of a proposed class action settlement generally involves
> two hearings.  First, counsel submit the proposed terms of
> settlement and the judge makes a preliminary fairness evaluation.
> In some cases, this initial evaluation can be made on the basis of
> information already known, supplemented as necessary by briefs,
> motions, or informal presentations by parties.  If the case is
> presented for both class certification and settlement approval, the
> certification hearing and preliminary fairness evaluation can
> usually be combined.  The judge should make a preliminary
> determination that the proposed class satisfies the criteria set out in
> Rule 23(a) and at least one of the subsections of Rule 23(b).  If
> there is a need for subclasses, the judge must define them and
> appoint counsel to represent them.  The judge must make a
> preliminary determination on the fairness, reasonableness, and
> adequacy of the settlement terms and must direct the preparation of
> notice of the certification, proposed settlement, and date of the
> final fairness hearing.

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632.

Thus, the preliminary approval by the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements.  As Professor Newberg comments:

> The strength of the findings made by a judge at a preliminary
> hearing or conference concerning a tentative settlement proposal
> may vary.  The court may find that the settlement proposal
> contains some merit, is within the range of reasonableness required
> for a settlement offer, or is presumptively valid subject only to any
> objections that may be raised at a final hearing.

4 Conte & Newberg, *Newberg on Class Actions*, § 11.26 (4th ed. 2010).  Accordingly, a court should grant preliminary approval of a class action settlement where it is within the "range of reasonableness."  Here, the Parties have reached such an agreement that is fair, reasonable, and adequate, and have submitted it to the Court in connection with this filing.

**B.    The Standard for Preliminary Approval.**

As a matter of public policy, settlement is a strongly-favored method for resolving disputes.  *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in complex class actions such as this case.  *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Preliminary approval does not require the Court to make a final determination that the

settlement is fair, reasonable, and adequate.  Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010).  In considering the settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice*, 688 F.2d at 625.  Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement...may be submitted to members of the prospective class for their acceptance or rejection."  *Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp*., 323 F. Supp. 364, 372 (E.D. Pa. 1970).

"The judge should raise questions at the preliminary hearing and perhaps seek an independent review if there are reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys."  MCL § 21.633. Here, the proposed settlement does not pose such issues.  This was a contentious litigation with the Parties each being represented by highly competent counsel.  As discussed above and in the declarations submitted herewith, the Parties engaged in motion practice and conducted thorough investigations related to the claims and defenses alleged in this case.  Further, the proposed settlement was reached after the Parties utilized the assistance of an experienced mediator, after substantial arm's-length negotiations between the Parties, and after thorough analysis of documents and information produced by Defendant in advance of mediation.

As detailed herein, the proposed settlement satisfies the standard for preliminary approval as it is well within the range of possible approval and there are no grounds to doubt its fairness. The Parties' attorneys have extensive experience in employment law, particularly wage and hour litigation, and reached settlement only after mediation and extensive arm's-length negotiations after the mediation.

//

//

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

**C.    The Court Should Certify the Settlement Class.**

The Parties also may, at the preliminary approval stage, request that the court provisionally approve certification of the class—conditional upon final approval of the settlement.  Settlements are highly favored, particularly in class actions.  *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice*, 688 F.2d at 625; *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).  Plaintiff requests such provisional approval at the preliminary approval hearing:

> The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal . . . . may be set out in conditional orders granting tentative approval to the various items submitted to the court.  Three basic rulings are often conditionally entered at this preliminary hearing. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.

4 Newberg on Class Actions at § 11.26.

Certification of a settlement class is "a two-step process." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,* No. 2672 CRB (JSC), 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). First, the Court must find that the proposed settlement class satisfies Rule 23(a)'s four requirements. *Id.* (citing Fed. R. Civ. P. 23(a)). Second, the Court must find that "a class action may be maintained under either Rule 23(b)(1), (2), or (3)." *Id.* (citing *Amchem Prods.*, 521 U.S. at 613). Here, the Class readily satisfies all Rule 23(a)(1)-(4) and (b)(3) certification requirements, and certification should be granted for settlement purposes. When "[c]onfronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there will be no trial." *Amchem Prods.*, 521 U.S. at 620.

**1.    Numerosity & Ascertainability**

The numerosity requirement is satisfied if the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris*

*v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  Numerosity is generally satisfied when the class exceeds forty members. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). The Parties estimate that as of the Date of Preliminary Approval the class will consist of at least 2,663 individuals. (Lee Decl. ¶ 7; Settlement Agreement § 3.) Accordingly, here, the Class is sufficiently numerous.

Defendant can readily ascertain the Class Members through Defendant's payroll records and will provide that information to the class administrator. (Settlement Agreement § 15.)

### 2.  Typicality

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: i.e., those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988).  "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiff alleges his claims are typical of Class Members because he alleges that he suffered injury from the same specific actions that he alleges harmed other members of the Class. (Mendoza Decl. ¶ 3.)  Plaintiff's claims are typical of the class because they arise from the same factual basis and are premised on the same legal theory as those applicable to the Class Members. (Mendoza Decl. ¶ 3.); *see Parsons*, 754 F.3d at 685; *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

### 3.  Commonality

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to class

1    members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality "does

2    not turn on the number of common questions, but on their relevance to the factual and legal

3    issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161,

4    1165 (9th Cir. 2014). Indeed, "'[e]ven a single question of law or fact common to the members

5    of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

6    338, 369 (2011). Here, Plaintiff contends the common issues include, among other things,

7    whether Defendant failed to provide accurate itemized wage statements, properly calculated the

8    rate of pay for overtime and sick pay, paid employees for time spent while using software

9    systems meant to track time, provided proper duty-free meal and rest periods, and reimbursed

10   employees for expenses related to use of their personal vehicles and/or cellular phones.

11   (Mendoza Decl. ¶ 3; Lee Decl. ¶ 3.) Courts routinely certify wage and hour class actions

12   premised on Labor Code violations. *See, e.g. Magadia v. Wal-Mart*, 2018 WL 339139 (N.D.

13   Cal. Jan. 9, 2018); s*ee also McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 299 (C.D. Cal.

14   2011).

### 4.   Adequacy

16       Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no disabling

17   conflicts of interest with other members of the class and Class Counsel are competent and well

18   qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512

19   (9th Cir. 1978); *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013).

20       No conflict exists between Plaintiff and the Class because Plaintiff has been damaged by

21   the same alleged conduct as all Class Members and has the incentive to fairly represent all Class

22   Members' claims to achieve the maximum possible recovery. (Mendoza Decl. ¶¶ 3, 6–7.)

23   Despite the settlement, Plaintiff remains willing to vigorously prosecute this action to the benefit

24   of the class.

25       Furthermore, Plaintiff is represented by attorneys who have extensive experience in

26   complex wage and hour litigation as is detailed in each of their declarations supported herewith.

27   (Lee Decl. ¶¶ 13–17; Gavron Decl. ¶¶ 2–8; Fitzpatrick Decl. ¶¶ 9.)

28   //

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA SETTLEMENT**

### 5. Common Questions of Law and Fact Predominate

Plaintiff contends that common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3). These issues of fact and law raised in this action are common to all members of the classes and predominate in this case. Plaintiff detailed the predominating questions of law and fact above.  Plaintiff alleges Defendant committed these alleged violations as to Plaintiff in the same manner as to all Class Members. (Mendoza Decl. ¶ 3; Lee Decl. ¶ 3.)

### 6. Superiority of Class Action

In this case, a class action is superior to other methods of adjudication and thus satisfies Rule 23(b)(3). Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See*, *e.g.*, *Hanlon*, 150 F.3d at 1022.  "The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at 174 (3d ed. 2005)).  Without class-wide relief in this action, the Class Members would be forced to litigate numerous cases on a piecemeal basis for relatively low potential damages.  *See Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008) (small interest in individual litigation where damages averaged $25,000-$30,000 per year of work).

### D. The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion.

### 1. The Settlement May be Presumed Fair and Reasonable.

There is a presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations.  *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the

product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (Citations omitted); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("When a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair.").

Additionally, Courts presume the absence of fraud or collusion in the negotiation of settlement unless evidence to the contrary is offered. *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987); *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979); *Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here, the Parties have conducted extensive investigation both before and after Plaintiff filed suit, participated in mediation, appear to be competent, and have experience with this type of litigation. *Newberg on Class Actions* at § 11.47; *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 ("So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement . . . and 'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citations omitted); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  Here, this settlement was reached only after motion practice and extensive investigation and mediation.  Thus, Plaintiff's counsel zealously litigated this case on behalf of the class.  (Lee Decl. ¶¶ 3–4, 8–10.)

//

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

### a.    Experience of Class Counsel.

Here, counsel for Parties have a great deal of experience in wage and hour class action litigation. Plaintiff's counsel has been approved as class counsel in a number of other wage/hour class actions. (Lee Decl. ¶¶ 13–17; Gavron Decl. ¶¶ 2–8; Fitzpatrick Decl. ¶¶ 9.) Moreover, Plaintiff's counsel conducted an extensive investigation of the factual allegations involved in this case prior to filing suit and throughout the course of preparing for mediation. Thus, based upon such experience and knowledge of the current case, Plaintiff's counsel believe that the current Settlement is fair, reasonable and adequate. (Lee Decl. ¶¶ 3–4, 8–10; Gavron Decl. ¶¶ 10–13; Fitzpatrick Decl. ¶¶ 3–7.) Plaintiff counsel details the pertinent details of a similar class action, which was preliminarily approved on March 26, 2020.. (Lee Decl., ¶ 11.)

### b.    Investigation and Discovery Prior to Settlement.

As mentioned, Class Counsel conducted significant factual and legal investigation and analysis prior to bringing this action, and in anticipation of mediation. (Lee Decl. at ¶¶ 3–4, 8–10; Gavron Decl. ¶¶ 10–12; Fitzpatrick ¶ 3.) Plaintiff set forth the information requested and produced by Defendant in anticipation of mediation above, and does not repeat it here. *See* Dkt. No. 38. Based on the data produced, Plaintiff estimated a potential maximum exposure for his class claims at approximately $23.9 million. (Lee Decl. ¶ 10.)

However, this assumes that Plaintiff could certify, and prove all his claims. For example, if Plaintiff could only prove a meal or rest period violation one time per week, then the estimated exposure would be reduced by $11.3 million. (Lee Decl. ¶ 10.) And it is Defendant's position that its meal and rest policies were, on their face and in practice, compliant, and that Plaintiff would not be able to establish even this reduced alleged violation rate, or any violation at all.

The ability of Plaintiff to succeed on his other claims was also uncertain. In addition to having to certify his class claims, to establish penalties under Labor Code § 226, Plaintiff would have to demonstrate that Defendant's conduct was not only unlawful but "knowing and intentional." *See* Labor Code § 226(e). Similarly, to obtain penalties under Labor Code § 203, Plaintiff would have to prove that Defendant's conduct was "willful." Labor Code § 203(a). Defendant denies that Plaintiff would be able to establish an underlying violation, much less

meet these additional burdens and obtain penalties on behalf of the Class.  Further, even if Plaintiff were able to certify his class claims, Courts routinely decertify class claims after class-wide discovery occurs.  *See, e.g., Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF, 2020 WL 127489, at *6 (N.D. Cal. Jan. 10, 2020) (decertifying class after years of litigation).

For PAGA penalties, Plaintiff calculates that Defendant faces penalties as high as approximately $5.8 million for the alleged wage statement violations alone.  (Lee Decl. at ¶ 10.) To the extent Plaintiff were successful on his other claims, Plaintiff maintains he might also be entitled to collect civil penalties for the other violations alleged in his Third Amended Complaint.  However, that amount is also subject to multiple defenses on the merits as well as further good faith defenses that Defendant may raise regarding its compliance with the Labor Code, as well as the general practice of courts to reject such claimed stacking of penalties.  Most importantly, PAGA penalties are discretionary and subject to reduction by this Court.  In practice, even where liability is found, such penalties are commonly and substantially reduced. For example, in a wage statement case implicating nearly 30,000 wage statements (28,747), even after finding a violation following a full bench trial on the merits, the Court massively reduced the PAGA award, applying only $100 per pay period (not $200), and then further reducing the calculated $2.8 million penalty to award $500,000.  *See also, Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 517 (2018) (*infra*) (applying 90% reduction to claimed PAGA penalties). Here, Defendant maintains Plaintiff would be incapable of establishing even the underlying asserted violations, much less any entitlement to any PAGA penalties.

Pursuant to Labor Code § 2699(f)(2), the Court can decline to award the full amount of PAGA penalties where "…if, based on the facts and circumstances of the particular case, to do otherwise, would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Indeed, courts have affirmed the reduction of PAGA penalties in the past.  As recently shown in *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 517 (2018), the Court of Appeal affirmed the trial court's reduction of PAGA penalties by 90 percent, citing the employer's good faith attempt at complying with the law.  Defendant has asserted such a defense here.  If the Court reduced the potential PAGA penalties on Plaintiff's wage statement claim by 90 percent as in

*Carrington*, Defendant's total exposure would be only $580,000.00 for that claim. (Lee Decl. at ¶ 10.)

In sum, the $3.5 million is a reasonable and fair settlement given the difficulties Plaintiff and the Class would face if they were to proceed with certification, litigation, and trial. (Lee Decl. ¶ 10.)

### 2.    The Settlement is Fair, Reasonable, and Adequate.

The settlement for each participating Class Member is fair, reasonable, and adequate, given the inherent risk of going forward with trial, the risk of appeals, the risks in an area where it is argued that the law is unsettled, and the costs of pursuing such litigation.

### a.    Risks of Proceeding with Trial and Any Appeals.

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. *In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); MCL § 21.62 at 316.

Here, the Settlement affords fair relief to the Class, while avoiding significant legal and factual battles, especially at trial, that otherwise may have prevented the Class from obtaining any recovery at all. Although Plaintiff's attorneys believe the certified claims are meritorious, they are experienced and realistic, and understand that the outcome of a class certification motion, trial, and the outcome of any appeals that would inevitably follow if the class prevailed at trial, are inherently uncertain in terms of both outcome and duration. The idea of balancing a fair recovery now, with settlement dollars being paid out now, as opposed to a years-long litigation and appeals process regarding various potential issues, is a significant factor in favor of approval of the class settlement. *DIRECTV*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation."). In light of these risks and uncertainties in

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

connection with proceeding with trial, Plaintiff asserts that this settlement is fair, adequate and reasonable.

### b.    The Settlement is Within the Range of Reasonableness.

The standard of review for class settlements is whether the settlement is within a range of reasonableness.  As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

4 Newberg on Class Actions, at §11.45.

Here, the settlement fund is non-reversionary, such that 100 percent of the Net Settlement Proceeds will be available for distribution to Settlement Class Members who do not opt-out. Moreover, the settlement does not require claim forms.  Rather, Class Members who do not opt-out will automatically receive a check.  Assuming that every Class Member elects to participate in the settlement, each Class Member will receive his or her pro rata share, with each person receiving on average an approximate amount of $680.94.  (Lee Decl. ¶ 7.)  Further, the settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon, etc.).  (Lee Decl. ¶ 7.)  Individuals that also fall within the statute of limitations period for Plaintiff's PAGA claims will receive approximately an additional $53 per person.  (Lee Decl. ¶ 7.)

In addition, as set forth in the Settlement Agreement, the release for Settlement Class Members is limited to only the claims asserted in Plaintiff's anticipated Third Amended Complaint, which Plaintiff attached as Exhibit B to the Declaration of Larry Lee.  (Settlement Agreement § 18.)  With respect to Plaintiff's PAGA claims, the release is similarly limited to only those asserted in the Third Amended Complaint.  (Settlement Agreement § 20.)  Thus, the release is appropriate as the released claims are tailored and limited only to the claims asserted in what will be the operative complaint.

//

//

For these reasons, and for the reasons set forth above relating to the total liability and the risks of prevailing on the theories of liability alleged, the current Settlement is fair, reasonable, and adequate.

### c. The Complexity, Expense, and Likely Duration of Continued Litigation Against the Settling Defendant Favors Approval.

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157. In applying this factor, the Court must weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971). The Settlement Agreement provides to all Class Members fair relief in a prompt and efficient manner. Were the Parties to engage in continued litigation of this matter and proceed to trial, Plaintiff may risk losing at trial on liability for the reasons explained above. Even before that, Plaintiff would be required to certify the proposed class, which is not a guarantee. *See, e.g.*, *Lao v. H&M Hennes & Mauritz, L.P.,* No. 5:16-CV-00333-EJD, 2018 WL 3753708, at *13 (N.D. Cal. Aug. 8, 2018) (granting certification as to some claims, but denying class certification as others). Moreover, following a decision at trial, there is also the possibility of appeal. Given the realities of litigation, this process places ultimate relief several years away. *See DIRECTV*, 221 F.R.D. at 526-27.

The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); 4 Newberg on Class Actions, at § 11.41.

### d. Non-Admission of Liability by Defendant.

Finally, Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit. Defendant maintains that it has always complied with California wage and hour laws. Because of such denial, if this case is not resolved, there is a high likelihood that the case will continue even after certification and trial into the process of appeal.

//

### E.    The Notice to be Given is the Best Practicable & Complies with the CAFA.

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise." Fed. R. Civ. P. 23(e)(B).

Here, the terms of the Settlement Agreement provide for a notice distribution plan that is designed to achieve the best notice that is practicable under the circumstances. The Claims Administrator is to mail via first-class U.S. mail a copy of the Court-approved Notice of Class Action Settlement ("Notice Packet") to all class members. (Settlement Agreement § 15.) The Claims Administrator will use a single skip-trace of the individual involved for undeliverable Notice Packets. (Settlement Agreement § 15b.) The Notice Packet provides Class Members with the information needed to make an informed decision. It provides a brief summary of the proposed settlement and information about the lawsuit, a summary of the allocations under the Settlement and the amount that the Settlement Class Member is estimated to receive, the Settlement Class Member's rights and claims that are included in the release, the Settlement Class Member's options including procedures on how to object and opt-out of the settlement, Class Counsel contact information for any questions, information regarding the final approval hearing and how to appear, procedures on how to obtain more information or access Pacer and/or court records, and contact information and website of the Claims Administrator. It also explains that those who do not opt out will be bound by the class settlement and that all members of the PAGA group will be bound by the PAGA settlement. (Lee Decl. ¶ 4; Ex. C.)

Concurrently with the filing of this Motion, the Parties also will provide notice in accordance with the Class Action Fairness Act. ( *See* Lee Decl. ¶ 7.)

### F.    Attorney's Fees, Costs, and Class Representative Enhancement.

Pursuant to the terms of the Settlement Agreement, and without opposition from Defendant, Plaintiff will also request an enhancement up to a maximum of $10,000.00. (Settlement Agreement § 5) This amount is to compensate Plaintiff for his efforts and work in

28

prosecuting this case, meeting and communicating with his counsel in advance of filing this action and after agreeing to participate in mediation; reviewing the pleadings and documents in this case; and for executing a general release under California Civil Code § 1542.

Similarly, Class Counsel will seek an award of attorneys' fees of not more than 1/3 of the Class Settlement Amount ($1,166,666.67) and reimbursement of actual litigation costs of up to $35,000.00. (Settlement Agreement § 8.) Plaintiff and Class Counsel will also seek the reimbursement of costs, which mainly includes filing fees, mediation costs, and travel expenses. To date, such costs are approximately $12,586.70. (Lee Decl. at ¶ 5; Fitzpatrick Decl. ¶ 2.) Both the requested enhancement amounts and attorneys' fees and costs will be requested simultaneously with Plaintiff's motion seeking final approval of this class action settlement. Any amounts not approved or allocated to these amounts will be available for distribution to the class.

### G.    Settlement Administrator.

The Parties have selected Phoenix Settlement Administrators as the Claims Administrator. (Lee Decl. ¶ 12.) Plaintiff's counsel obtained quotes from Phoenix Settlement Administrators, Rust Consulting, and JND Legal Administration. (Lee Decl. ¶ 12, Ex. D.) Given that Phoenix Settlement Administrators provided the lowest quote, the Parties subsequently agreed to use Phoenix Settlement Administrators. (*Id.*) Further, notice by U.S. mail along with the National Change of Address search and skip trace for undeliverable mail has been approved by numerous courts. Additionally, a list of cases in which Phoenix Settlement Administrators was appointed as the claims administrator in cases involving Plaintiff's counsel over the last two years is set forth Plaintiff counsel's declaration. (Lee Decl. ¶ 12.)

While the Parties' Settlement Agreement provided for estimated settlement administration fees not to exceed $25,000.00, Plaintiff was able to obtain a quote from Phoenix Settlement Administrators for the administration not to exceed $18,950.00. (Settlement Agreement § 9; Lee Decl. ¶ 10, Ex. D.) Plaintiff and his counsel believe that this amount is reasonable in relation to the value of the settlement, as the administration costs account for less than 1% of the Class Settlement Amount. (Lee Decl. at ¶ 12.) The administration costs will be deducted from the

29

1  Class Settlement Amount.

2  **III.    CONCLUSION**

3         Based on the foregoing, Plaintiff respectfully requests that the Court (1) grant preliminary

4  approval for the proposed class action and PAGA settlement; (2) authorize the mailing of the

5  proposed notice to the Class of the settlement; and (3) schedule a "fairness hearing," i.e. a

6  hearing on the final approval of the settlement.

7

8  Dated:  April 14, 2020                    DIVERSITY LAW GROUP, P.C.

9

10                                           By:   _/s/ Larry W. Lee_____

11                                               Larry W. Lee
                                                 Max W. Gavron
12                                               Attorneys for Plaintiff and the Class

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**