James Fitzpatrick, Esq. (SBN: 129056)
Charles Swanston, Esq. (SBN: 181882)
**FITZPATRICK & SWANSTON**
555 South Main Street
Salinas, CA 93901
Telephone:  (831) 755-1311
Facsimile:  (831) 755-1319

Larry W. Lee (SBN 228175)
Max W. Gavron (SBN 291697)
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa Street, Suite 1250
Los Angeles, California 90071
Telephone:  (213) 488-6555
Facsimile:  (213) 488-6554

Attorneys for Plaintiff
JAVIER MENDOZA on behalf of himself and all
other similarly situated employees

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER MENDOZA on behalf of himself and all other similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL VISION, INC.; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. 19-cv-01485-SVK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          September 15, 2020<br>Time:          10:00 A.M.<br>Courtroom:  6, 4th Floor<br>Judge:        Hon. Susan van Keulen |

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 15, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Susan van Keulen, Plaintiff Javier Mendoza ("Plaintiff") will and hereby does move the Court for an Order:  (1) granting final approval of the proposed class action settlement; (2) approving Class Counsel's application for attorneys' fees in the amount of $1,166,666.67 (approximately one-third of the Gross Settlement Fund) and reimbursement of costs in the amount of $12,900.92; and (3) approving Plaintiff's request for an enhancement award of $10,000.00.

Given that this is a Motion for Final Approval of a settlement reached with Defendant National Vision, Inc. ("Defendant" or "NVI"), Plaintiff does not anticipate that Defendant will oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Max W. Gavron, B. James Fitzpatrick, and Javier Mendoza, and Elizabeth Kruckenberg, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated:  August 11, 2020                    DIVERSITY LAW GROUP, P.C.


                                          By:    /s/ Larry W. Lee
                                                 Larry W. Lee
                                                 Max W. Gavron
                                          Attorneys for Plaintiff and the Class

# TABLE OF CONTENTS

**Page(s)**

**I.   INTRODUCTION** ......................................................................................... 8

**II.   SUMMARY OF ARGUMENT** ..................................................................... 9

**III.   THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT** ........................................................ 10

  **A.   Dissemination of Notice** .................................................................... 10

  **B.   CAFA Notice** ....................................................................................... 10

**IV.   OVERVIEW OF ISSUES AND ARGUMENT** .......................................... 10

**V.   LITIGATION HISTORY** ............................................................................ 10

**VI.   THE SETTLEMENT** ................................................................................... 12

**VII.   THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL** .... 14

  **A.   The Strength of Plaintiff's Case Supports Settlement** ................... 15

  **B.   Risks, Expense, and Duration of Continued Litigation Supports Settlement** ........ 15

  **C.   The Settlement Amount Favors Settlement** .................................... 16

  **D.   The Extent of Discovery Favors Settlement** ................................... 17

  **E.   The Recommendations of Counsel Favor Approval of the Settlement** ................. 17

  **F.   The Class Has Responded Favorably to the Proposed Settlement** ......................... 18

  **G.   The Procedure Through Which the Settlement Was Achieved Supports Final Approval** .... 18

**VIII.   THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED** ........ 20

  **A.   The Percentage Awarded Should Mimic the Market** ..................... 24

  **B.   The Lodestar Calculation "Cross-Check"** ...................................... 27

    **1.   Plaintiff's Counsel's Lodestar is Reasonable** ........................... 29

  **C.   The Court Should Approve the Request for Reimbursement of Costs** ................... 29

**IX.   PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED** ................... 30

**X.   CONCLUSION** ............................................................................................ 31

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA SETTLEMENT

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Armstrong v. Board of Sch. Dirs*., 616 F.2d 305, 325 (7th Cir. 1980).......................................... 17

*Bellinghausen v. Tractor Supply Co*., 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) ....... 16

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ...................................................................... 21

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)............................................................ 20, 21

*Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979)................................................... 17

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) ................................... 31

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991)....................... 21, 24

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) ................................................. 21

*Chambers v. Whirlpool Corp*., No. 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) .......... 22

*Chun–Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ..... 15, 17, 18, 19

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004).......................................... 18

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................................................. 14

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ................................................................ 31

*Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016)............................................. 17

*Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008)......................... 26

*Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) ............................................................................................................................... 26

*Dyer v. Wells Fargo Bank, N.A*., 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014).... 15, 17, 18

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ....................................... 17

*Emmons v. Quest Diagnostics Clinical Labs., Inc*., No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) ................................................................................. 24

*Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240, 251-252 (S.D. Ohio 1991) ................................................................................................................................... 31

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr*., 250 F.3d 1234, 1236 (9th Cir. 2001) ................................................................................................................................... 22

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)................................................... 21

*Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007) ........................................................................................................ 31

*Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007)........ 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) .......................................... 14, 19

*Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF (SVK), 2020 WL 127489, at *6 (N.D. Cal. Jan. 10, 2020) ........................................................................................................ 27

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ............................... 21

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) . 31

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) ................................. 16, 17

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)........................... 18

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995)...................................... 21

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000) ........................................................................................................................ 28

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881) ......................... 21

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) ................................................... 14

*Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001) ........................................................ 29

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ............................................ 17

*Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 5:16-cv-333 EJD .................................... 26

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ............................... 20

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019) ........................ 27

*Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ......................... 22

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)............................................................... 20

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013)............. 15

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ................................... 28

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982).................................................................................................. 18, 19

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ......................... 18

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

*Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34)............................... 23

*Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983)................................................ 17

*Reilly v. Recreational Equipment, Inc.*, N.D. Cal. Case No. 18-cv-07385-LB (Dkt. No. 61)...... 23

*Roberts v. Texaco*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997)........................................................ 26

*Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019)................................... 26

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)............................................. 19

*Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261-62 (C.D. Cal. 2016)......................... 28

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939) .................................................... 21

*Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) .......................................................... 30

*Stemple v. RingCentral, Inc.*, N.D. Cal. Case No. 3:18-cv-04909-LB ................................... 26, 29

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11, 2016)........ 21, 28

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ................ 31

*Vandervort*, 8 F. Supp. 3d at 1209-10......................................................................................... 30

*Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal.

    Dec. 12, 2016)........................................................................................................................ 23

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)................................... 22, 26, 28

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000) ........................... 29

*Weiss v. Mercedes–Benz*, 899 F. Supp. 1297 (D.N.J. 1995)....................................................... 26

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) ................ 20

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ................................................. 17, 19

*Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-

    EPG (Dkt. No. 55) ................................................................................................................ 23

**State Cases**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ........................................... 9, 15, 17

*Laffitte v. Robert Half Int'l., Inc.* (2014) 231 Cal.App.4th 860 ............................................. 23, 24

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) ....... 30

*Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1136 (2012) ........... 16

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA SETTLEMENT**

**Statutes**

Labor Code § 203.................................................................................................. 15

Labor Code § 218.5............................................................................................... 30

Labor Code § 226(e)............................................................................................. 30

Labor Code § 2698............................................................................................... 11

Labor Code § 2699(g)(1)...................................................................................... 30

Labor Code § 2699(e)(2)...................................................................................... 16

**Other Authorities**

4 *Newberg on Class Actions*, §11.24 (4th Ed. & Supp. 2002).................................. 19

4 *Newberg on Class Actions*, §11.45 ..................................................................... 16

4 *Newberg on Class Actions*, §14.6 ................................................................. 21, 24

*Manual for Complex Litigation* (Fourth) § 21.6 (2004) ....................................... 9, 19

*Manual For Complex Litigation* (Fourth) § 30.42 ................................................ 19

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 11

Federal Rule of Civil Procedure 23(e) ................................................................. 14

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

By this motion, Plaintiff Javier Mendoza ("Plaintiff") seeks final approval of a substantial class-wide settlement reached between Plaintiff and Defendant National Vision, Inc. ("Defendant" or "NVI") (Plaintiff and Defendant collectively, the "Parties").  Plaintiff also seeks an order approving Class Counsel's application for attorneys' fees in the amount of $1,166,666.67 (one-third of the Gross Settlement Fund of $3,500,000.00), reimbursement of litigation costs in the amount of $12,900.92, and Plaintiff's application for an enhancement award of $10,000.00.  This request was set forth in the Notice of Class Action Settlement ("Notice Packet") mailed to all Class Members.  As set forth in the Settlement Agreement and Release of Claims ("Settlement Agreement") between the Parties, Defendant has agreed to not object to the requests sought herein.

The Class Settlement results in an average payment of approximately $706.82 per person, with the highest payment to be approximately $2,865.59.  (Declaration of Elizabeth Kruckenberg ("Kruckenberg Decl.") ¶ 11.)

On April 29, 2020, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Settlement (Dkt. No. 49).  On April 30, 2020, the Court issued an amended Order Granting Plaintiff's Motion for Preliminary Approval, in which the Court shortened the Class Period of "November 13, 2014, through May 31, 2020" to "November 13, 2014, through **April 30, 2020**" ("Preliminary Approval Order").  (Dkt. No. 50.)  As the notice process has been completed, the Parties now seek this Court's final approval of the settlement.

The settlement requires Defendant to pay a total of $3,500,000.00, a sum which represents a substantial recovery for the members of the Class.  **Again, this settlement is non-reversionary, such that no monies will revert back to Defendant.**  As such, there was no claims process involved.  Class Members were given an opportunity to object or opt-out of the settlement.  To date, there have been two (2) opt outs and zero (0) objections to the settlement. (Kruckenberg Decl. ¶¶ 8–9.)  Accordingly, this shows that nearly all of Class Members have reacted favorably to the settlement.  Moreover, all of this Court's orders concerning

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1  dissemination of the Notice Packet have been followed.  Based thereon, Plaintiff respectfully

2  requests that final approval be granted in its entirety.

3  **II.    SUMMARY OF ARGUMENT**

4          The Parties have engaged in extensive investigation and review of Defendant's document

5  production and class data, from which Plaintiff's counsel was able to calculate the maximum

6  exposure.  As detailed in Plaintiff's Motion for Preliminary Approval, based on the data

7  produced, Plaintiff calculated that the realistic potential damages for the Class was

8  approximately $23.9 million if Plaintiff prevailed on all his claims.  (Declaration of Larry W.

9  Lee ("Lee Decl.") ¶ 4.)  However, if Plaintiff were only able to prove one meal or rest period

10  violation per week, then the estimated exposure would be reduced by $11.3 million.  (*Id.*)  With

11  respect to the PAGA penalties, which are discretionary and subject to reduction by this Court,

12  the potential maximum is approximately $5.8 million.  (*Id.*)  If this Court reduced the PAGA

13  penalties by 90%, as the trial court did in *Carrington*, then the total exposure would be only

14  $580,000.00.  (*Id.*)  On February 19, 2020, the Parties attended a full day of mediation with

15  employment mediator, Jeffrey A. Ross, Esq.  While the case did not immediately settle, Mr. Ross

16  issued a mediator's proposal for the Parties' consideration.  (Lee Decl. ¶ 5.)

17          The detailed terms of the settlement are set forth in the Settlement Agreement and

18  Release of Claims ("Settlement Agreement") entered into by the Parties and previously provided

19  to this Court.  (Dkt. No. 48-1, Ex. A.)  Pursuant to the settlement terms, Defendant will pay the

20  entirety (100%) of the settlement sum of $3,500,000.00 without any reversion to Defendant.

21          The proposed settlement meets the criteria for final approval which are set forth in the

22  *Manual for Complex Litigation*, Fourth, is well within the range of what would be fair,

23  reasonable, and adequate in this case.  Thus, Plaintiff requests that the Court take the final step in

24  the approval process – granting the requested final approval of the settlement which is sought

25  herein.

26  //

27  //

28  //

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA SETTLEMENT**

1    **III.**    **THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND**

2            **SUCCESSFULLY CARRIED OUT**

3            **A.**    **Dissemination of Notice**

4          As noted above, preliminary approval was granted on April 30, 2020.  At that time,

5  Phoenix Settlement Administrators (the "Settlement Administrator") was appointed by the Court

6  as the Settlement Administrator.  The Parties, through the work of the Settlement Administrator,

7  have complied with this Court's orders concerning dissemination of the class notices.  (*See*

8  *generally* Kruckenberg Decl.)

9          The notices were mailed to the class of 2,765 individuals utilizing the data provided by

10  Defendant.  (Kruckenberg Decl. ¶¶ 2–5.)  Of those, 214 notices were returned with an invalid

11  address.  (Kruckenberg Decl. ¶ 6.)  Out of these, 7 were mailed to forwarding addresses and 205

12  were mailed to updated addresses after using skip trace.  (*Id.*)  As of the date of the filing of this

13  Motion, nine (9) Notice Packets are considered undeliverable.  (*Id.* ¶ 7.)

14            **B.**    **CAFA Notice**

15          On April 22, 2020, Defendant provided notice of the proposed settlement to the required

16  agencies.

17    **IV.**    **OVERVIEW OF ISSUES AND ARGUMENT**

18          As discussed in detail in the previously filed Motion for Preliminary Approval (Dkt. No.

19  48), the class claims at issue in this lawsuit arise from Plaintiff's allegations that Defendant

20  failed to provide duty-free meal and rest periods or provide compensation in lieu thereof,

21  required Plaintiff and Class Members to clock out and continue to perform work (i.e. review and

22  approve their daily and weekly timesheets), failed to reimburse Plaintiff and Class members for

23  business expenses, failed to correctly calculate the regular rate of pay, and failed to issue

24  accurate itemized wage statements.  Defendant strongly disagrees with Plaintiff's contentions

25  and believes that Plaintiff's claims are without merit.  Defendant contends that it has complied

26  with all applicable laws.

27    **V.**    **LITIGATION HISTORY**

28          On November 13, 2018, Plaintiff commenced this action in Superior Court for the State

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1    of California, County of Monterey, alleging the following causes of action:  (1) failure to provide

2    meal periods or compensation in lieu thereof; (2) failure to provide rest periods or compensation

3    in lieu thereof; (3) failure to pay hourly and overtime wages; (4) failure to comply with itemized

4    employee wage statement requirements; (5) failure and refusal to pay agreed wages; (6) failure to

5    pay all wages upon termination; and (7) unfair business practices.

6         On January 22, 2019, Plaintiff filed a First Amended Complaint, adding a cause of action

7    for violation of Labor Code § 2698, *et seq.*, the Private Attorneys General Act ("PAGA").

8         On March 21, 2019, Defendant filed a Notice of Removal of Action to the United States

9    District Court for the Northern District of California.  (Dkt. No. 1.)  On April 12, 2019, Plaintiff

10   moved to remand.  (Dkt. No. 16.)  After briefing and oral argument, the Court denied Plaintiff's

11   Motion for Remand on July 8, 2019, and maintained jurisdiction.  (Dkt. No. 25.)

12        Thereafter, the Parties extensively met and conferred regarding Defendant's anticipated

13   motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. No. 26.

14   Plaintiff filed his Second Amended Complaint, on July 22, 2019, to address some of the

15   deficiencies alleged by Defendant during meet and confer efforts.  (Dkt. No. 29.)  The Parties

16   then continued to meet and confer regarding Defendant's anticipated motions, and the progress

17   of the case generally.  The Parties agreed to participate in a mediation with respected mediator

18   Jeffrey Ross and stipulated to stay formal discovery and Defendant's deadline to respond to

19   Plaintiff's Second Amended Complaint pending mediation with Mr. Ross.  (Dkt. No. 30.)

20        Plaintiff conducted extensive investigation into Plaintiff's claims, including review and

21   analysis of Defendant's policies and procedures regarding meal and rest breaks and business

22   reimbursements, incentive plan documents, and detailed payroll data in advance of the

23   mediation. (Lee Decl. ¶¶ 3–4.)  On February 19, 2019, the Parties attended an all-day mediation

24   with Jeffrey A. Ross.  (*Id*. at ¶ 5.)  After a full day of arm's length negotiations, during which the

25   Parties were unable to reach an agreement, Mr. Ross issued a mediator's proposal for the Parties'

26   consideration.  The Parties ultimately accepted Mr. Ross's proposal and began drafting the

27   Settlement Agreement.  (*Id*.)

28        On May 8, 2020, Plaintiff filed a Third Amended Complaint.  (Dkt. No. 51.)  The Third

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Amended Complaint includes a claim and sub-class for employees who earned sick pay during the applicable class period. The Third Amended Complaint is the operative complaint ("Complaint").

## VI.    THE SETTLEMENT

The Settlement terms were summarized in detail in the Motion for Preliminary Approval, and Plaintiff respectfully incorporates those arguments herein to avoid duplication. The specific terms of the settlement are set forth in the Settlement Agreement and the Order Granting Motion for Preliminary Approval of Class Settlement. (Dkt. Nos. 48-1, Ex. A, and 50.) The principal terms are:

   a.    Settlement Class is "[a]ll current and former employees who were employed by National Vision, Inc. within the State of California in a non-exempt, hourly position at any time from November 13, 2014, through April 30, 2020."

   b.    The Settlement Class is releasing:

> [A]ny and all claims, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, actions, or causes of action contingent or accrued for any and all claims that were asserted in the original and amended complaints filed in the Lawsuit, or any claims which could have been asserted based on the factual allegations in the original and amended complaints filed in the Lawsuit, including, without limitation claims for unpaid wages, claims for unpaid, agreed, minimum, and overtime wages, claims for unpaid or incorrectly paid sick pay, claims for unreimbursed employee business expenses, claims for liquidated damages, claims for record-keeping violations, claims for wage-statement penalties, claims for "waiting time" penalties, claims of late/untimely payment of wages, and derivative claims under Business and Professions Code section 17200, et seq. This release shall also include claims for restitution and other equitable relief, liquidated damages, punitive damages, or penalties, and any other benefit claimed on account of the claims, of any kind or nature whatsoever, to the extent they are or reasonably could be based on the factual allegations asserted in the original and amended complaints filed in the Lawsuit. ("Released Settlement Class Claims") With regard to the Released Settlement Class Claims only, Settlement Class Members waive all rights and benefits afforded by section 1542 of the Civil Code of the State of California (and other similar statutes and regulations), and do so understanding the significance of that waiver.

   c.    The Aggrieved Employees consist of "all current and former employees who were employed by National Vision, Inc. within the State of California in a non-exempt,

hourly position at any time from September 7, 2017 through the preliminary approval date or April 30, 2020."

d.    The Aggrieved Employees are releasing:

[A]ny and all claims, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, actions, or causes of action contingent or accrued for any and all claims for penalties pursuant to Labor Code section 2698, et seq. (PAGA), including but not limited to claims for penalties pursuant to PAGA based on alleged violations of Labor Code sections 201, 202, 203, 204, 208, 210, 216, 218, 218.5, 218.6, 221, 223, 225.5, 226, 226.3, 226.7, 246, 510, 512, 558, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2699, 2800, 2802, and 2810.5 ("Released PAGA Claims") With regard to the Released PAGA Claims only, Aggrieved Employees waive all rights and benefits afforded by section 1542 of the Civil Code of the State of California (and other similar statutes and regulations), and do so understanding the significance of that waiver.

e.    Defendant will pay a total settlement amount of $3,500,000.00. This sum includes payments made to the settlement class members, settlement administration costs, awards of attorneys' fees and costs, the class representative enhancement award, and payment to the LWDA.

f.    Out of the total Settlement Amount of $3,500,000.00, $450,000.00 will be allocated as the PAGA Settlement Amount. In accordance with PAGA, 75% (*i.e.*, $337,500.00) of the PAGA Settlement Amount will be paid to the LWDA and 25% (*i.e.*, $112,500.00) will be distributed to the Aggrieved Employees in accordance with the formula set forth in the Parties' Settlement Agreement (Dkt. No. 48-1, Ex. A.)

g.    The sum available for use as payments to class members after the settlement administration costs, award of attorneys' fees and costs, the class representative enhancement award, and the PAGA Settlement Amount shall be referred to as the Net Settlement Proceeds. Defendant agrees that it shall pay the entirety (100%) of the Net Settlement Proceeds. **In other words, the settlement is non-reversionary, meaning that no funds will revert back to Defendant.**

h.    No claim forms were necessary for any Class Member to participate in the

13

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1      settlement and receive their share of the settlement.  Thus, any Class Member

2      who does not opt-out in connection with this settlement will automatically receive

3      his/her share of the settlement proceeds.  On average, Class Members will receive

4      approximately $706.82 per person, with the highest payment to be approximately

5      $2,865.59.  (Kruckenberg Decl. ¶ 11.)

6      i.    All of this Court's orders in connection with the settlement administration process

7      have been followed.  (*See* Kruckenberg Decl.)

8      The settlement represents a compromise between the positions and evaluations of the two

9  sides to this controversy. Clearly, there were significant disagreements between the Parties as to

10  the facts and the law.

11  **VII.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL**

12      Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action

13  must receive Court approval.  The court has broad discretion to grant such approval and should

14  do so where the proposed settlement is "fair, adequate, reasonable, and not a product of

15  collusion." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*,

16  218 F.3d 132, 138 (2nd Cir. 2000).  In determining whether a proposed settlement should be

17  approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly

18  where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268,

19  1276 (9th Cir. 1992).

20      The fairness, reasonableness, and adequacy of any class action settlement depends on

21  "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of

22  further litigation; the risk of maintaining class action status throughout the trial; the amount

23  offered in settlement; the extent of discovery completed and the stage of the proceedings; the

24  experience and views of counsel; . . . and the reaction of class members to the proposed

25  settlement." *Hanlon* 150 F.3d at 1026.  Here, as set forth in the Motion for Preliminary

26  Approval and discussed below, the factors for final approval of this settlement have been

27  established.

28  *//*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1    **A.    The Strength of Plaintiff's Case Supports Settlement**

2    This factor is generally satisfied when plaintiffs must overcome barriers to make their

3    case.  *Chun–Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  First,

4    Plaintiff would have been required to prevail on a class certification motion, which is never a

5    guarantee.  Second, even assuming class certification could be achieved, Plaintiff would have

6    been required to establish that the violations did in fact exist.  As set forth above, Defendant

7    disputes any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff.

8    Moreover, Defendant denies that it acted willfully and/or knowing and intentionally to warrant

9    penalties under Labor Code §§ 203 and 226.  Finally, even if a violation could be established, as

10    to the PAGA claim, this Court has complete discretion to decrease any applicable penalties that

11    could be assessed.  Indeed, the California Court of Appeals upheld a decision wherein PAGA

12    penalties were reduced by 90%.  *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018).

13    Therefore, this factor favors settlement.  *See Dyer v. Wells Fargo Bank, N.A*., 2014 WL

14    5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs

15    acknowledge that, if the settlement is not approved, they will encounter significant obstacles in

16    establishing their claims"); see *also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5

17    (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement

18    because plaintiffs admitted they would face hurdles in proving liability and damages).

19    **B.    Risks, Expense, and Duration of Continued Litigation Supports Settlement**

20    "Difficulties and risks in litigating weigh in favor of approving a class settlement."  *Dyer*,

21    2014 WL 5369395, at *3 (citation omitted).  In addition to the obstacles set forth above, even if

22    Plaintiff had prevailed at trial, there was a likelihood that Defendant would have appealed the

23    verdict.  Thus, the risks, expense, and duration of continued litigation favor final approval of the

24    settlement.  *See id.* at *3 ("This factor supports final approval of this settlement because, without

25    a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

26    Again, Plaintiff faced significant risk in this case based on Defendant's contention that its meal

27    and rest break policies, hourly rate calculations, business reimbursement policies, and wage

28    statements complied with the law.

1

### C. The Settlement Amount Favors Settlement

2

The standard of review for class settlements is whether the Settlement is within a range of

3

reasonableness. As Professor Newberg comments:

4

> Recognizing that there may always be a difference of opinion as to
> the appropriate value of settlement, the courts have refused to

5

> substitute their judgment for that of the proponents. Instead the
> courts have reviewed settlements with the intent of determining

6

> whether they are within a range of reasonableness.…

7

4 *Newberg on Class Actions*, at §11.45.

8

Numerous courts have held that **gross** settlements approximating between only 8 and

9

25% of the defendant's potential exposure are fair and reasonable. *See, e.g.*, *In re Mego Fin.*

10

*Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement

11

recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash

12

settlement amounting to only a fraction of the potential recovery does not per se render the

13

settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should

14

be assessed relative to risks of pursuing the litigation to judgment"; noting that whether the

15

settlement is fair and adequate depends on the "the difficulties in proving the case");

16

*Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015)

17

(holding that class action settlement recovering between 8.5% and 25% of the defendant's

18

potential exposure was fair).

19

As already stated above, Defendant contends that it has complied with the law.

20

Moreover, under Section 2699(e)(2), using its discretion the presiding court "may award a lesser

21

amount than the maximum civil penalty amount . . . if, based on the facts and circumstances of

22

the particular case, to do otherwise would result in an award that is unjust, arbitrary and

23

oppressive, or confiscatory." Lab. Code § 2699(e)(2); *see also Amaral v. Cintas*, 163 Cal. App.

24

4th at 1211-1212 (recognizing the reviewing court has discretion to reduce civil penalties

25

because of an employer's "good faith defense"); *Thurman v. Bayshore Transit Management,*

26

*Inc.*, 203 Cal. App. 4th 1112, 1136 (2012) (holding that "trial court reasonably determined that

27

an award of the maximum penalty amount [under PAGA] would be unjust"); *Cotter v. Lyft, Inc.*,

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA SETTLEMENT**

193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) (same).  Again, in *Carrington*, 30 Cal. App. 5th 504, the Court of Appeal affirmed the trial court's reduction of PAGA penalties by 90%.

Nevertheless, assuming 100% liability, the $3.5 million settlement represents 14.6% of the maximum $23.9 million exposure (including maximum PAGA penalties), which is reasonable and consistent with other class action settlement recoveries.  If the Court were to reduce the PAGA penalties, or Plaintiff were not to prevail on one of his claims, that percentage would increase.

### D.     The Extent of Discovery Favors Settlement

Here, settlement was reached following the exchange of significant meet and confer processes and production and review of substantial amounts of data and documents.  The negotiations at all times were adversarial and non-collusive, including a full day before a third-party mediator.  Moreover, Plaintiff's counsel had the information necessary to ascertain the value of the class claims.  Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement.  *See, e.g.*, *Dyer*, 2014 WL 5369395, at *3; *Chun-Hoon*, 716 F. Supp. 2d at 848 ("true value of the class claims is well-known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

### E.     The Recommendations of Counsel Favor Approval of the Settlement

The recommendations of experienced counsel should be given considerable weight. *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980),  ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp*., 703 F.2d 170, 175 (5th Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong v. Board of Sch. Dirs*., 616 F.2d 305, 325 (7th Cir. 1980).

Lead counsel for Plaintiff has broad experience litigating employment class actions.  (Lee

Decl. ¶¶ 7–12; Declaration of Max W. Gavron ("Gavron Decl.") ¶¶ 2–8; Declaration of B. James Fitzpatrick ("Fitzpatrick Decl.") ¶¶ 7–10.)  They support this settlement as a fair and reasonable settlement which is in the best interest of the settlement class.  (Lee Decl. ¶¶ 3–7; Gavron Decl. ¶¶ 12–13; Fitzpatrick Decl. ¶¶ 2–6.)  Therefore, this factor favors approval of the settlement.  *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (same).

### F.    The Class Has Responded Favorably to the Proposed Settlement

" "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members.  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, zero individuals have objected, only two individuals have opted out of this settlement, and there are no disputes.  (Kruckenberg Decl. ¶¶ 8–9.)  In other words, this settlement has a 0% objection and a 0.07% opt out rate.  (*Id.*)  Thus, the low percentage of objections and opt-outs strongly support the fairness of the settlement.  *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun–Hoon*, 716 F. Supp. 2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### G.    The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case.  *Officers for Justice*, 688 F.2d at 625. Therefore, although not one of the *Officers for Justice* listed factors, the procedures by which the settlement was achieved also strongly support the fairness of the settlement.  *See Chun-Hoon*,

716 F. Supp. 2d at 851 ("To these factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at"), citing *Manual for Complex Litigation* (Fourth) § 21.6 (2004). As noted above, the parties participated in an arm's-length negotiation, facilitated by a professional mediator with significant class action experience, and the ultimate settlement was the result of the mediator's proposal. This weighs in favor of approval of the settlement. *See Chun-Hoon*, 716 F. Supp. 2d at 851 (finding that use of formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027. The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id*. at 965 (citations omitted). *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) § 30.42).

The proposed settlement has no deficiencies. There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted). In making its determination, the Court should

---

weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendant's contention that it would prevail on the merits.

## VIII.    THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Governing Ninth Circuit law, following the clear instruction of the United States Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), establishes that percentage awards are to measure against the entire common fund created in the settlement. In *Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007), citing to the Ninth Circuit authority, the Court noted:

> The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.

*See also Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir.1997).

Moreover, the U.S. Supreme Court consistently has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970). The purpose of this doctrine is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone. It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Every United States Supreme Court case that has considered the award of attorneys' fees under the common fund doctrine has determined those fees as a percentage of the recovery. *See, e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)) (noting that the percentage of recovery method is the appropriate method to award attorneys' fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).

The Ninth Circuit has also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery). Although the Ninth Circuit has typically found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have awarded higher amounts. *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016). The twenty-five percent benchmark may be adjusted upward or downward depending on the circumstances presented by the particular case. Indeed, the Ninth Circuit and district courts therein have routinely permitted recovery in the amount of 33.33%, 40% and even up to 50% of the common fund. *See, e.g.*, *In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (listing Ninth Circuit cases).

Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel is seeking here, is appropriate and even desirable in cases like this. *See Newberg on Class Actions*, Fourth Edition, vol. 4, p. 556, § 14.6 (noting that percentage of the fund awards are preferable because they align the interests of the attorney with the client, as the attorney is not incentivized to bill unnecessary hours to generate a greater fee); *Boeing*, 444 U.S. at 478. Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee, under the POR (percentage of recovery) method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fees the lawyer earns. Thus, one of the primary advantages of the POR method is that it is thought to equate the interests of class counsel with those of the class

members and encourage class counsel to prosecute the case in an efficient manner.

As reiterated by the Ninth Circuit, courts are obligated to apply California law in diversity jurisdiction cases in awarding attorneys' fees.[1] *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity jurisdiction, we are obligated to apply California state law regarding attorneys' fees."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *Chambers v. Whirlpool Corp.*, No. 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ("[i]n diversity actions…, the Ninth Circuit **applies state law to determine the right to fees and the method for calculating fees**") (emphasis added).

As this case was removed to this Court pursuant to CAFA and diversity jurisdiction, Plaintiff respectfully submits that California law should govern this Court's analysis.  The California Supreme Court clarified its stance on common fund cases, ruling –

> "We join the overwhelming majority of federal and state courts in holding that when class action litigation established a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016).  Explaining its ruling, the Court further held that "[t]he recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging litigation – convince us the percentage method is a valuable tool that should not be denied by our trial courts." *Id* (internal citations omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047.

---

[1] Defendant removed this action based on the CAFA and traditional diversity jurisdiction.  In its ruling on Plaintiff's Motion for Remand, the Court reserved ruling on traditional diversity jurisdiction because it had CAFA jurisdiction but did not reject diversity jurisdiction.  (Dkt. No. 25.)

---

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Based on this rationale, the California Supreme Court in *Laffite* affirmed a fee award representing one-third of the common fund and rejected the objections of putative class members to this award. *Laffitte*, 1 Cal.5th at 506. Further, this was based on a lodestar amount that required a multiplier of 2.13. *Id*. at 487. As the Court held, only when the multiplier is "extraordinarily high or low [should] the trial court [] consider whether the percentage method should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id*. at 505. Moreover, in the *Laffitte* intermediate court decision, the court observed that "33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Laffitte v. Robert Half Int'l., Inc*., 231 Cal. App. 4th 860, 871 (2014).

Indeed, numerous district courts have followed *Laffitte* in awarding 1/3 of the common fund. For example, the Northern District Court in *Villalpando v. Exel Direct Inc*., No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016), cited *Laffitte* when awarding 33% of the common fund:

> Plaintiffs' fee request of $ 4,500,000 represents one-third of the Settlement Fund, which is reasonable under both applicable law, and in light of the contingent risk, Counsel's documented lodestar, the complex and protracted nature of the case, and strong result for the Class.

*Id*.

Likewise, Judge Davila of the Northern District Court in *Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34), followed *Laffitte* in awarding Plaintiff's counsel (the same counsel as in the instant case) 1/3 of the common fund of $1.15 million based on a multiplier of 1.32; *see also Reilly v. Recreational Equipment, Inc.*, N.D. Cal. Case No. 18-cv-07385-LB (Dkt. No. 61) (awarding 1/3 of the common fund based on a 2.7 multiplier).

The Eastern District Court in *Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55), also followed *Laffitte*, in awarding 1/3 of the common fund of $3.4 million, or $1,133,333.33 in attorneys' fees applying a multiplier of 1.328. (Dkt. No. 55 at pp. 12-14). In so holding, the Court reiterated that "[i]n a diversity action such as this, federal courts apply state law both to determining the right to fees and the method of calculating them." *Id.*; *see also Emmons v. Quest Diagnostics Clinical Labs., Inc*., No.

113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) (following *Laffitte* in awarding 33% of the common fund; "[t]he California Supreme Court recently held that the percentage-of-fund method of calculating attorneys' fees survives in California courts"). Accordingly, Plaintiff respectfully requests this Court to follow these authorities and award attorneys' fees in the amount of one-third of the common fund.

**A.**      **The Percentage Awarded Should Mimic the Market**

*Newberg on Class Actions*, Fourth Edition, vol. 4, p. 560, § 14.6 contains an interesting discussion of the concept of a marketplace analysis and why it is so valuable in determining a percentage award:

> [Goodrich and Silver]…suggest that fee awards should be consistent with contingent fee arrangements negotiated in non-class litigation:
>
> The percentage method is consistent with and is intended to mirror practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. As Judge Posner emphasized in *In re Continental Illinois Securities Litigation*s, "[t]he object in awarding a reasonable attorney's fee…is to simulate the market...The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." In non-class litigations, one-third contingency fees are typical. In their concurring opinion in Blum, Justices Brennan and Marshall observed that "[i]n tort suits, an attorney might receive one-third of whatever the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."
>
> If named plaintiffs have agreed to pay a one-third contingent fee, that is powerful evidence of a reasonable fee. One of the best ways to demonstrate the value of counsel's work to the class is to review the consideration agreed to be paid by the named plaintiffs in their contracts. If the named plaintiffs have employed their counsel by contingent fee agreements that obligated them to pay one-third of the recovery, it would indeed be inequitable for the members of the class, who will enjoy the benefits of this settlement without incurring the risks of bringing the claim, to pay less than the named plaintiffs.

The complex and litigated nature of this litigation, and its successful result lead to the clear conclusion that the fee request herein is reasonable.  In *Camden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th Cir. 1991), the court identified various factors to be considered in arriving at a common fund fee determination.  Each of the factors is now

24

---

briefly addressed.

1.     The time and labor required – this is overwhelmingly established in this motion, based upon the work involved, and the supporting attorney declarations and time charts submitted;

2.     The novelty and difficulty of the questions involved – although Plaintiff believed that he could have easily obtained class certification, there was substantial risk that this case may not have prevailed on its merits.  Further, wage and hour class actions are always an evolving area of law;

3.     The skill requisite to perform the legal services properly – this goes hand in hand with the first and second factors.  Plaintiff's counsel was able to litigate this case effectively and ultimately achieved a very good result for the class because of Plaintiff's counsel's experience in litigating wage and hour cases;

4.     The preclusion of other employment by the attorney due to the acceptance of the case – the case required and demanded attorney time on both sides.  The result of this scheduling was that Class Counsel could have spent such time on numerous other matters while this litigation was ongoing;

5.     The customary fee – as discussed above, numerous courts have approved an award of 33.33% of the gross settlement fund, which is the standard percentage pursuant to California law;

6.     Whether the fee is fixed or contingent – this matter was clearly contingent without any sort of fixed or guaranteed fees for Class Counsel.  Indeed, Plaintiff's counsel's sole payment was based on contingency fee and no fixed guaranteed costs would have received unless Plaintiff's counsel were successful in this litigation;

7.     Time limitation imposed by the client or the circumstances – although the client did not impose any time limitations, Class Counsel invested a significant amount of time in this case;

8.     The amount involved and results obtained – which is discussed above;

9.     The experience, reputation and ability of the attorney – as evidenced by the

supporting declarations, Class Counsel has been designated and certified as class counsel in numerous other matters, including in the Northern District;

10. The nature and length of the relationship with the client – this does not apply; and

11. Awards in similar cases – similar cases were identified in the section above.

Plaintiff's counsel has diligently and efficiently litigated this case and significant risks were assumed by Plaintiff's counsel in litigating this case. Plaintiff's counsel's lodestar cross check also supports the award of the 33.33% percentage fee given that their lodestar cross check is only seeking a 2.95 multiplier.

Indeed, courts may approve higher multipliers in common fund cases. To be sure, the Northern District applied a multiplier of 5.44 in awarding attorneys' fees in a common fund class action settlement in *Stemple v. RingCentral, Inc.*, N.D. Cal. Case No. 3:18-cv-04909-LB; *see also Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a multiplier of 5.2 and collecting cases); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (approving 30% fee, resulting in 5.3 multiplier); *Roberts v. Texaco*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (approving multiplier of 5.5); *Weiss v. Mercedes–Benz*, 899 F. Supp. 1297 (D.N.J. 1995) (approving multiplier of 9.3), *aff'd*, 66 F.3d 314 (3d Cir.1995). Lodestar multipliers may appear high for cases that settle efficiently. However, "it may be a relevant circumstance that counsel achieved a timely result" and courts recognize that "the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino*, 290 F.3d at 1051 n.6. Here, counsel negotiated an efficient settlement for the class. Reducing the fee award to reduce the multiplier would serve as a penalty for efficient settlement.

Moreover, Plaintiff's attorneys are zealous advocates, having heavily and aggressively litigated numerous wage and hour class actions on behalf of workers throughout the State of California – all cases of which are on a contingency fee basis. *See*, *e.g.*, *Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 5:16-cv-333 EJD; *Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019); *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal.

2019).  For example, in *Magadia*, Plaintiff's counsel litigated that case for several years, including trying the case to a successful $102 million judgment on behalf of the class.  Walmart appealed and Plaintiff's counsel have not been reimbursed for any attorneys' fees or costs.  As such, employment class actions present significant risks.  Nevertheless, Plaintiff's attorneys zealously represent workers notwithstanding the potential for losing cases, or not being reimbursed attorneys' fees and costs for years of tireless litigation.  In other cases, Plaintiff's counsel has litigated for several years only to have a class decertified on the eve of trial.  *See, e.g.*, *Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF (SVK), 2020 WL 127489, at *6 (N.D. Cal. Jan. 10, 2020).  Plaintiff's counsel should not be punished here for resolving this case without going through years of aggressive litigation.

The fee sought relates to all efforts expended by Class Counsel for the complete handling of the class/representative action, including any additional work remaining to be performed by Class Counsel in securing final Court approval of the Settlement, and later following through to ensure that the Settlement is fairly administered and fully implemented.

A significant amount of work on the part of Class Counsel went into achieving this resolution.  Based upon the factors relating to approval of percentage of the fund fee awards, class counsel submit that the effort and result justify the requested percentage fee requested.  As a secondary "cross-check" to the percentage of the common fund award, class counsel are also providing this Court with a time and task chart, which breaks down the tasks and time spent by each firm, so that the Court can conduct a lodestar analysis.

Plaintiff's attorneys' time and task charts show in this case that Plaintiff's counsel lodestar is $394,965.00, which requires only a multiplier of approximately 2.95.

**B.    The Lodestar Calculation "Cross-Check"**

It has been noted that it is sometimes helpful to courts to "cross-check" a percentage award by employing a lodestar with a multiplier analysis.  While the lodestar method is generally considered inappropriate in a common fund case where real cash benefits (as opposed to coupons or non-monetary benefits) are made available to class members, its use can provide further validation of the appropriateness of the percentage award approach.  *See In re Prudential Ins.*

1  *Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000).  Such is the case

2  here.

3       The declarations of Class Counsel evidence the fact that they devoted approximately

4  613.4 hours of time to this litigation to date.  (Lee Decl. ¶ 13, Ex. A; Gavron Decl. ¶ 9, Ex. A;

5  Fitzpatrick Decl. ¶¶ 8–9, Ex. A.)  These hours are summarized in the time and task charts that are

6  attached to Plaintiff's counsel's declarations.  And, to the extent that any argument is made that

7  the time spent was duplicative, the way in which Plaintiff's counsel work is for each attorney to

8  handle a task and for the other attorneys to review and revise the work, which is identical to the

9  way defense firms staff and handle cases.  More importantly, as recently noted by the Ninth

10  Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11, 2016),

11  "some amount of duplicative work is 'inherent in the process of litigating over time.'"  (Citing

12  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).)

13       In addition, as explained above, Class Counsel expect to expend an additional 25 hours

14  through the final approval hearing, including on matters such as preparing the Motion for Final

15  Approval and further conferring with Class Members regarding the case status, as well as post

16  judgment matters, including ensuring administration of the settlement.  (Lee Decl. ¶¶ 14; Gavron

17  Decl. ¶ 10; Fitzpatrick Decl. ¶¶ 8–9.)  Thus, Class Counsel will have expended 638.4 hours

18  through final approval.

19       Applying the various hourly rates of the law firms, lawyers, and paralegals who dedicated

20  their efforts to this matter, a lodestar of $394,965.00 is established for the amount of work spent

21  through final administration of this settlement.  (Lee Decl. ¶¶ 13–15; Gavron Decl. ¶¶ 9–10;

22  Fitzpatrick Decl. ¶¶ 8–9.)  The percentage award sought by Class Counsel, if converted to the

23  lodestar method, would entail a multiplier of approximately 2.95.  In the Ninth Circuit,

24  multipliers "ranging from one to four are frequently awarded . . . when the lodestar method is

25  applied."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir.).  For example, in

26  *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261-62 (C.D. Cal. 2016), *appeal dismissed*

27  *sub nom. Spann v. J.C. Penney Corp., Inc*., No. 16-56474, 2016 WL 9778633 (9th Cir. Nov. 7,

28  2016), the Court granted a 3.07 multiplier.  And, again, the Northern District of California

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

applied a 5.44 multiplier in *Stemple*, N.D. Cal. Case No. 3:18-cv-04909-LB.  Thus, the fee application is supported whether by the cross-check lodestar/multiplier method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

### 1.    Plaintiff's Counsel's Lodestar is Reasonable

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable.  Plaintiff's attorneys are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. The background and experience of Plaintiff's counsel are fully set forth in the declarations filed in support of this motion.  The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation.  The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed.  (Lee Decl. ¶¶ 13–15, Ex. A; Gavron Decl. ¶¶ 9–11, Ex. A; Fitzpatrick Decl. ¶¶ 8–9, Ex. A.)

As discussed in their supporting declarations, Class Counsel are a group of well-experienced litigators, including class action litigation.  (Lee Decl. ¶¶ 7–12; Gavron Decl. ¶¶ 2–8; Fitzpatrick Decl. ¶¶ 7–10.)  Under California law, counsel are entitled to compensation for all hours reasonably spent on the matter.  *Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001). Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself…."  *Vo v. Las Virgenes Municipal Water Dist*., 79 Cal. App. 4th 440, 447 (2000).  In addition, the attached time and task charts clearly reflect the many hours which were necessarily spent on the case.

Whether analyzed under the percentage of the fund approach, which is the dominant view, or via the cross-check approach under the loadstar/multiplier approach, the fees are fully supported.  This entire case has been litigated from the onset, demanded an extraordinary effort on the part of Class Counsel, and further required substantial costs advanced.

### C.    The Court Should Approve the Request for Reimbursement of Costs

The request for reimbursement of costs, in the amount of $12,900.92 is fair and

1   reasonable.  As stated above, the costs are all litigation related costs, which have been detailed in

2   the supporting declaration of Class Counsel.  (Lee Decl. ¶ 16, Ex. B; Fitzpatrick Decl. ¶ 10, Ex.

3   B.)  The authority for the Court to award costs is the Parties' Settlement Agreement and Labor

4   Code §§ 218.5, 226(e), 1194, and 2699(g)(1).  Further, pursuant to the Settlement Agreement,

5   Defendant has agreed not to oppose any request for reimbursement of costs up to $35,000.00, but

6   the actual costs that are being sought are much less than the amount allotted in the Settlement

7   Agreement.  Thus, the unclaimed costs in the amount of $22,099.08 will be allocated to the Net

8   Settlement Proceeds available for distribution to Class Members.  Pursuant to all of the authority

9   cited above, including *Vandervort*, 8 F. Supp. 3d at 1209-10, Plaintiff's counsel should be

10  awarded their costs.

11  ## IX.    PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED

12          Finally, Plaintiff's enhancement is also justified given his availability throughout the

13  litigation to cooperate in producing documents, reviewing documents, and being available both

14  in person and by telephone to offer crucial information regarding this lawsuit.

15          Plaintiff respectfully requests that the full amount of the service payment be awarded to

16  Plaintiff for the efforts undertaken on behalf of the Class Members.  It is commonly held that it is

17  appropriate to recognize the role of the representative plaintiffs without whose actions and

18  courage the benefits of the settlement, which are conferred on the class as a whole, would never

19  have been achieved.  The criteria courts may consider in relation to incentive payments include:

20  1) the risk to the class representative in commencing the suit, both financial and otherwise; 2) the

21  notoriety and personal difficulties encountered by the class representative; 3) the amount of time

22  and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal

23  benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *See*

24  *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) (citing

25  *Stanton v. Boeing Co*., 327 F.3d 938, 975 (9th Cir. 2003)).  Each of these factors favors the

26  service awards requested in the present case.

27          Plaintiff is the only representative in this case.  Plaintiff met with his attorneys to provide

28  information regarding the facts involved.  (Declaration of Javier Mendoza ("Mendoza Decl.")

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1  ¶¶ 4–5.)  Plaintiff made himself available to answer questions, review the pleadings, including

2  the Settlement Agreement, and sign declarations in support of the various motions that have been

3  brought in this case.  (*Id*.)

4         Plaintiff took these risks upon himself from which the whole Class benefitted.  Class

5  Members did not have to file individual lawsuits, nor did they have to bear the risks of payment

6  of fees and costs should they not prevail.  (*Id*. ¶¶ 6, 9.)  Class Members also do not have to face

7  the risk of potential retaliation or risk of future employment, due to Plaintiff's efforts.  (*See id.*

8  ¶ 9.)  Furthermore, Plaintiff agreed to provide a general release of all claims, which is something

9  that the Class Members did not have to do.  (*Id*.)  In short, Plaintiff sacrificed a significant

10 amount of time, effort, and his own rights in bringing about the benefits to the Class.

11        The payment of enhancement awards to successful class representatives is appropriate

12 and the amount of $10,000 to Plaintiff is within the typically accepted range.  *See e.g. Van*

13 *Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award

14 of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 374 (S.D.

15 Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000);

16 *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000

17 Incentive award); *Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240,

18 251-252 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *Glass v. UBS Fin.*

19 *Servs*., No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007)

20 (awarding $25,000 Incentive award in FLSA overtime wages class action); *Cook v. Niedert*, 142

21 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 Incentive award to class representative in

22 ERISA case).  Moreover, a $10,000 service payment represents a mere **0.29%** of the gross

23 settlement amount.  For such reasons, Plaintiff respectfully requests that this Court find the

24 enhancement payment amount of $10,000 to Plaintiff as fair, reasonable, and adequate and that

25 the enhancement payment be awarded to Plaintiff.

26 **X.    CONCLUSION**

27        Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Motion

28 be granted in its entirety and grant Plaintiff's counsel's fee request of $1,166,666.67, costs

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA SETTLEMENT**

requested in the amount of $12,900.92 and class representative enhancement of $10,000.00.  The Parties have reached this settlement following extensive litigation, ongoing case discussions and arm's length negotiations.  Plaintiff respectfully requests that the Court:

1.       Grant final approval of the proposed settlement;

2.       Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3.       Order payment from the settlement proceeds to Class Counsel and Plaintiff in compliance with the Settlement Agreement;

4.       Order payment from the settlement proceeds to the LWDA in compliance with the Settlement Agreement;

5.       Enter the proposed Final Approval Order and Judgment submitted herewith; and

6.       Retain continuing jurisdiction over the implementation, interpretation, and consummation of the settlement.


Dated:  August 11, 2020                    DIVERSITY LAW GROUP, P.C.


                                                         By:  ___/s/ Larry W. Lee_____
                                                                Larry W. Lee
                                                                Max W. Gavron
                                                         Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**